**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION
   Plaintiff,

 v.

SEVEN & I HOLDINGS CO., LTD., and
7-ELEVEN, INC.

   Defendants.

Civil Action No. 1:23-cv-03600-RDM

**<u>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

I.     FACTUAL BACKGROUND............................................................................................ 2

II.    STATUTORY BACKGROUND......................................................................................... 5

LEGAL STANDARD........................................................................................................... 12

ARGUMENT ...................................................................................................................... 13

THE COMMISSION HAS AUTHORITY TO BRING THIS CIVIL PENALTY SUIT ............ 14

        A.     Section 16 is comprehensive and specifies when DOJ or the FTC has authority to bring cases arising under the FTC Act........................................ 14

        B.     Section 16(a)(1) specifically authorizes this civil penalty action. ........................ 15

        C.     7-Eleven's contrary position is wrong. ................................................................. 17

             1.  7-Eleven ignores key text in Section 16(a)(1) and improperly reads Sections 5(*l*) and 5(m) in isolation from the rest of the statute..................... 17

             2.  7-Eleven misreads the FTC Act's statutory history....................................... 20

        D.     Case law and agency practice confirm the FTC's authority to bring this case. ............................................................................................... 23

        E.     7-Eleven's remaining arguments fail.................................................................... 26

             1.  7-Eleven misreads Section 5(m). .................................................................. 26

             2.  7-Eleven's interpretation would compromise the comprehensive enforcement scheme created by Congress. ..................................................... 27

     CONCLUSION.................................................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Alpine Indus. v. FTC*, 40 F. Supp. 2d 938 (E.D. Tenn. 1998) ..................................................... 24

*AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67 (2021) .............................................................. *passim*

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).................................................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 12

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ....................................................... 12

*Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010)....................................................... 23

*Dubin v. United States*, 599 U.S. 110 (2023)................................................................. 14

*Fernandez v. Centerplate/NBSE*, 441 F.3d 1006 (D.C. Cir. 2006)................................................ 12

*FTC v. Bristol-Meyers Squibb Co.*, No. 1:09-cv-00576-EGS (D.D.C. Apr. 1, 2009).................. 25

*FTC v. Cement Inst.*, 333 U.S. 683 (1948) .................................................................. 28

*FTC v. Columbia/HCA Healthcare Corp.*, No. cv-98-1889 (D.D.C. Aug. 6, 1998).................... 25

*FTC v. Consol. Foods Corp.,* 396 F. Supp. 1344 (S.D.N.Y. 1974)...................................... 22, 23

*FTC v. Consol. Foods Corp.,* 396 F. Supp. 1353 (S.D.N.Y. 1974)............................................ 23

*FTC v. Credit Bureau Ctr., LLC,* 937 F.3d 764 (7th Cir. 2019)...................................... 24

*FTC v. CVS Corp.*, No. cv-98-0773 (D.D.C. Mar. 30, 1998)........................................ 25

*FTC v. Federated Dep't Stores, Inc.*, No. cv-95-1965 (D.D.C. Dec. 8, 1995)............................ 25

*FTC v. Lukens Steel Co.,* 454 F. Supp. 1182 (D.D.C. 1978) .................................................. 22, 23

*FTC v. Lukens Steel Co.*, Civil Action No. 74-9226, 1975 WL 881 (D.D.C. Apr. 5, 1975)........ 22

*FTC v. Norm Reeves, Inc.*, No. 8:17-cv-01942-JLS-DFM (C.D. Cal. Nov. 13, 2017) ............... 25

*FTC v. Onkyo USA Corp.*, No. 95-1378-LFO, 1995 WL 579811 (D.D.C. Aug. 21, 1995)... 25, 26

*FTC v. Ramey Motors, Inc.*, No. 1:14-cv-29603 (D. W. Va. Sep. 9, 2015) ................................ 25

*FTC v. RHI AG*, No. cv-04-0524 (D.D.C. Apr. 1, 2004)...................................................... 25

*FTC v. Rubus Dev. Corp.*, No. cv-94-0041 (D.D.C. Jan. 12, 1994)............................................. 25

*FTC v. Schnuck Mkts., Inc.*, No. 4:97CV01830CEJ (E.D. Mo. Sept. 16, 1997) ......................... 25

*FTC v. Star Pipe Prods., Ltd.*, No. 1:16-cv-00755-RDM (D.D.C. May 12, 2016) ................ 25, 26

*FTC v. Sunkist Growers, Inc.*, No. S6-2400 (D.D.C. Aug. 28, 1986) ......................................... 25

*FTC v. Toys "R" Us, Inc.*, No. 1:11-cv-00635-RMC (D.D.C. Apr. 7, 2011) .............................. 25

*Goldring v. District of Columbia*, 416 F.3d 70 (D.C. Cir. 2005) ................................................. 21

*Jackson v. Modly*, 949 F.3d 763 (D.C. Cir. 2020) ........................................................... 13

*Jones v. Hendrix*, 599 U.S. 465 (2023)........................................................................... 15

*Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 575 U.S. 650 (2015)......................... 23

*LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018)................................................... 11, 24

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ......................................................................... 23

*Moore v. District of Columbia*, 907 F.2d 165 (D.C. Cir. 1990) ................................................. 21

*Planned Parenthood Fed. of Am., Inc. v. Heckler*, 712 F.2d 650 (D.C. Cir. 1983)...................... 21

*Tataranowicz v. Sullivan*, 959 F.2d 268 (D.C. Cir. 1992) ....................................................... 21

*Top Value Meats, Inc. v. FTC*, 586 F.2d 1275 (8th Cir. 1978)............................................. 19, 24

*U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133 (D.D.C. 2015)...................... 21

*U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir. 2017)............................ 21

*United States v. J.B. Williams Co.*, 498 F.2d 414 (2d Cir. 1974) ................................................. 6

*United States v. Menasche*, 348 U.S. 528 (1955) ........................................................... 15

*United States v. Restland Funeral Home, Inc.*, 51 F.3d 56 (5th Cir. 1995)................................. 24

*United States v. St. Regis Paper Co.*, 355 F.2d 688 (2d Cir. 1966)................................. 6, 24, 29

*United States v. Standard Distribs., Inc.*, 267 F. Supp. 7 (N.D. Ill. 1967) ................................ 5, 6

*Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004)................................................. 12

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ........................................................ 19, 23

**Statutes**

5 U.S.C. § 3106 ............................................................................................................................. 15

15 U.S.C. § 45(a)(2), FTC Act § 5(a)(2) ....................................................................................... 5

15 U.S.C. § 45(b), FTC Act § 5(b) ................................................................................................ 5

15 U.S.C. § 45(c), FTC Act § 5(c) ............................................................................................... 15

15 U.S.C. § 45(*l*), FTC Act § 5(*l*) ........................................................................................ *passim*

15 U.S.C. § 45(m), FTC Act § 5(m) ....................................................................................... *passim*

15 U.S.C. § 50, FTC Act § 10 ......................................................................................... 16, 19, 24

15 U.S. C. § 54, FTC Act § 14 .......................................................................................... 6, 7, 8, 22

15 U.S.C. § 56, FTC Act § 16 ............................................................................................... *passim*

15 U.S.C. § 57a, FTC Act § 18 .................................................................................................... 10

15 U.S.C. § 57b, FTC Act § 19 .................................................................................................... 15

28 U.S.C. Ch. 31 ............................................................................................................................ 9

28 U.S.C. § 516 ............................................................................................................................ 15

28 U.S.C. § 519 ............................................................................................................................ 15

28 U.S.C. § 1331 .......................................................................................................................... 12

28 U.S.C. § 1337(a) ..................................................................................................................... 12

28 U.S.C. § 1345 .......................................................................................................................... 12

28 U.S.C. § 1355 .......................................................................................................................... 12

31 U.S.C. § 3302 .......................................................................................................................... 20

FTC Amends. Act of 1994, Pub. L. No. 103-312, 108 Stat. 1691 (1994) ................................... 11

FTC Improvement Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975) ............................... 8, 9, 10, 22

Trans-Alaska Pipeline Authorization Act, Pub. L. 93-153, 87 Stat. 576 (1973) ............... 6, 17, 21

Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111 (1938)................................................ 6

**Other Authorities**

H.R. Rep. 103-138 (1993), 1993 WL 213734 (1993)....................................................................... 27

H.R. Rep. No. 93-624 (1973) (Conf. Rep.), 1973 WL 12654 ..................................................... 8, 21

S. Rep. No. 63-597 (1914) ................................................................................................................ 28

S. Rep. 93-1408 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 7755 ...................... 9, 22

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................................. 12, 13

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 12, 13

**INTRODUCTION**

In 2018, the Federal Trade Commission ("FTC" or "Commission") entered a Consent Order resolving antitrust claims against Defendants Seven & i Holdings Co., Ltd. and 7-Eleven, Inc. (together, "7-Eleven" or "Defendants"). The claims involved 7-Eleven's planned acquisition of retail fuel outlets owned by Sunoco LP. The Consent Order required divestitures, prohibited the acquisition of numerous Sunoco outlets, and required that 7-Eleven notify the FTC before acquiring any interest in certain third-party fuel outlets. A few months later, 7-Eleven acquired one of those third-party outlets without notifying the FTC, in violation of the Consent Order. 7-Eleven then failed to report the violation to the FTC for over three years—despite the Consent Order's strict notice and reporting requirements. 7-Eleven eventually alerted the FTC about the acquisition in 2022, leading to this action seeking civil penalties and injunctive relief for 7-Eleven's continuing violation of the Consent Order.

7-Eleven now moves to dismiss the FTC's complaint based on the unprecedented theory that only the Attorney General—and not the FTC—may seek civil penalties for violations of Commission orders. The plain text of the FTC Act forecloses that argument. Section 16 of the FTC Act, 15 U.S.C. § 56, expressly confers litigating authority on the FTC in a broad array of circumstances, including in "an action to collect a civil penalty." 15 U.S.C. § 56(a)(1). While Section 16 does require the Commission to refer civil penalty cases to the Attorney General— i.e., the Department of Justice ("DOJ")—in the first instance, the FTC may bring the case itself if DOJ does not take action within 45 days. For over fifty years, the FTC and DOJ have used these procedures to share responsibility for bringing civil penalty actions. DOJ has brought many of these actions, but the FTC also has brought civil penalty litigation itself as permitted by Section

1

16. Courts have ordered civil penalties in numerous FTC-initiated cases for violations of Commission orders, including consent orders directed at anticompetitive conduct.

There is no merit to 7-Eleven's argument that the FTC lacks authority to seek civil penalties for violation of a Commission order concerning anticompetitive conduct. That argument contravenes the FTC Act's plain text and structure, its legislative history, and consistent interpretation of the statute by courts, the FTC, and DOJ over a span of decades. Indeed, no court has ever ruled that the FTC could not represent itself in a case like this one. The Court should deny Defendants' motion to dismiss.

## BACKGROUND

### I.    FACTUAL BACKGROUND

This case concerns 7-Eleven's violation of a prior notice requirement in an FTC Consent Order. The FTC uses prior notice requirements in orders to prevent anticompetitive mergers that might otherwise go undetected. Dkt. 1 at 6-7 (Compl. ¶ 18).[1] Prior notice requirements protect the American public from repeat offenders and prevent law violations by allowing antitrust enforcers to find out about acquisitions believed to raise competitive concerns even if those acquisitions do not trigger the Hart-Scott-Rodino Act's premerger notification thresholds. *Id.*

In 2018, 7-Eleven and the Commission agreed to the Consent Order to prevent harms to competition for retail gas and diesel fuel arising out of 7-Eleven's planned acquisition of certain Sunoco LP outlets. *Id.* at 1, 6 (Compl. ¶¶ 1, 16, 17); Dkt. 1-2 at 13 (Compl. Ex. B ¶ II.F). Among other things, the Consent Order requires that 7-Eleven give the FTC thirty-days' notice before acquiring any interest in specific third-party retail fuel outlets, located in specified local markets where 7-11 already had a significant market share, for a period of ten years. Dkt. 1 at 6, 8

---

[1] An unredacted version of the Complaint has been filed at Dkt. 15.

(Compl. ¶¶ 18, 21); Dkt. 1-2 at 22 (Compl. Ex. B ¶ VII.B). The Consent Order provides that the FTC may request additional information and prohibits 7-Eleven from closing the proposed acquisition until thirty days after it complies with the request. Dkt. 1 at 8 (Compl. ¶ 21). A specific outlet in St. Petersburg ("the St. Petersburg Outlet") is identified in the Consent Order schedule as subject to the prior-notice obligation.[2] *Id*. at 7 (Compl. ¶ 19).

7-Eleven does not dispute that it violated the prior notice requirement. *Id*. at 8 (Compl. ¶ 22). In May 2018—just months after 7-Eleven agreed to the Consent Order—7-Eleven began discussions with the property owner about leasing the St. Petersburg Outlet. *Id*. at 9 (Compl. ¶ 24). At the end of November, 7-Eleven approved the lease. *Id*. On December 6, 2018, 7-Eleven began leasing the St. Petersburg Outlet. *Id*. Significantly, the 7-Eleven representative who signed the lease had been informed of the prior notice provision of the Consent Order—which required 7-Eleven to give the FTC prior notice before acquiring any "leasehold[s]," and, as discussed, specifically identified the St. Petersburg outlet—but executed the lease anyway. *Id*.

7-Eleven did not give the FTC prior notice of its acquisition of the St. Petersburg Outlet, violating the Consent Order. The acquisition also demonstrates 7-Eleven's failure to implement effective internal controls for ensuring compliance with the Consent Order. *Id*. (Compl. ¶ 25). 7-Eleven's compliance process at the time consisted solely of circulating a memorandum from outside counsel about the prior notice obligations to some, but not all, of the employees involved with leasing, acquiring, or taking an interest in fuel sites. *Id*. at 9-10.

7-Eleven compounded its violation of the Consent Order when it concurrently filed false reports with the FTC stating that it was not making any acquisitions requiring prior notice. *Id*. at 10 (Compl. ¶ 26). In its compliance reports, certified by 7-Eleven's in-house counsel, 7-Eleven

---

[2] The outlet is located at 3100 54th Avenue South, St. Petersburg, FL, 33712, OPIS No. 338038.

consistently stated that "7-Eleven is not presently seeking to acquire any interest in the 7-Eleven Assets, the Sunoco Retained Assets, or any Relevant Notice Outlets." *Id*. The St. Petersburg Outlet was a Relevant Notice Outlet, so this certification was false beginning at least in May 2018, when 7-Eleven had discussions with the property owner about leasing the St. Petersburg Outlet, until it entered the lease in December 2018. *Id*. (Compl. ¶ 27). During this time, 7-Eleven submitted eight false reports to the FTC. *Id*.

In March 2022, over three years after 7-Eleven had acquired the St. Petersburg Outlet, 7-Eleven first informed the FTC of the acquisition. *Id*. at 11 (Compl. ¶ 29). 7-Eleven then submitted an annual compliance report reflecting the acquisition. *Id*. On March 2, 2023, nearly a year later and at the FTC's urging, 7-Eleven sold the St. Petersburg Outlet to a third party. *Id*. (Compl. ¶ 30). In total, 7-Eleven generated approximately $4.5 million by violating the Consent Order. *Id.* at 3 (Compl. ¶ 6).

On December 4, 2023, the FTC filed a Complaint in this court seeking civil penalties and injunctive relief under 15 U.S.C. § 45(*l*) for 7-Eleven's years-long violation of the Consent Order. The Complaint alleges that a civil penalty is appropriate based on each of the factors for determining the civil penalty amount for an FTC order violation, including that 7-Eleven violated a straightforward provision of the Consent Order within months of agreeing to it, failed to implement any semblance of corporate controls to ensure compliance with the prior notice provision, removed a competitor from the market, repeatedly made false certifications of compliance to the FTC, and reaped millions of dollars from the violation. *Id.* at 3, 8, 11-14 (Compl. ¶¶ 4, 6, 20-21, 32-38).

On February 5, 2024, Defendants filed their motion to dismiss, arguing that the FTC lacks authority to bring this civil penalty case.[3] Dkt. 22.

## II.    STATUTORY BACKGROUND

The FTC Act broadly authorizes the Commission to litigate in its own name subject to conditions that give the DOJ a right of first refusal in certain circumstances. Congress has increased the FTC's litigating authority over the years to ensure timely and effective enforcement of the FTC Act, and the FTC and DOJ have carried out their respective litigation responsibilities pursuant to the statute.

From the FTC's creation in 1914, Section 5 of the FTC Act granted the Commission authority to issue cease-and-desist orders against respondents found to have violated the Act. 15 U.S.C. § 45(b). This authority furthered Congress's directive to the Commission to prevent unfair competition. 15 U.S.C. § 45(a)(2). Initially, however, enforcement of Commission cease-and-desist orders required multiple, time-consuming trips to the courthouse before a court could ultimately find a respondent in contempt and order associated monetary relief. *See generally United States v. Standard Distribs., Inc.*, 267 F. Supp. 7, 10 (N.D. Ill. 1967).

**The 1938 Amendments.** To address this problem, in 1938 Congress added to the FTC Act provisions to accelerate when and how a Commission cease-and-desist order would become final, and authorized civil penalties for violations of such an order. The changes included the two FTC Act provisions at issue here: Section 5(*l*) and Section 16. The 1938 version of Section 5(*l*) stated:

> Any person, partnership, or corporation who violates an order of the Commission to cease and desist after it has become final . . . shall forfeit and pay to the United States a

---

[3] Defendants also moved to stay discovery, Dkt. 23, which the FTC opposed, Dkt. 25. On February 20, the Court stayed discovery until the April 17 argument on the motion to dismiss.

civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States.

Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111, 114 (1938). Congress also enacted Section 14 of the FTC Act to provide for criminal penalties. *Id.* at 115-16. At the same time, Congress, in Section 16, gave responsibilities to the Commission and the Attorney General for carrying out these two new provisions. Specifically, Section 16 provided that:

> Whenever the Federal Trade Commission has reason to believe that any person, partnership, or corporation is liable to a penalty under section 14 or under subsection (*l*) of section 5, it shall certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for the enforcement of the provisions of such section or subsection.

*Id.* at 116-17. Congress also expanded the FTC Act's prohibitions to include "unfair or deceptive acts or practices" in addition to "unfair methods of competition." *United States v. St. Regis Paper Co.*, 355 F.2d 688, 692 (2d Cir. 1966).

These provisions thus authorized new civil penalties for violations of Commission cease-and-desist orders (Section 5(*l*)) and required the FTC to certify facts to the Attorney General whenever the agency had reason to believe that any person was liable for a civil penalty (Section 16). *See* 52 Stat. 114, 116-17. The amendments "eliminat[ed] the cumbersome procedures for the enforcement of FTC cease and desist orders," *St. Regis Paper*, 355 F.2d at 692 (cleaned up), and introduced "a new weapon which would put teeth into the enforcement machinery." *Standard Distribs.*, 267 F. Supp. at 10; *see also United States v. J.B. Williams Co.*, 498 F.2d 414, 425 (2d Cir. 1974) (emphasizing that the 1938 amendments "added a number of provisions intended to make the FTC's orders more effective").

**The 1973 Amendments.** In 1973, Congress amended the FTC Act "to grant the Federal Trade Commission the requisite authority to [e]nsure prompt enforcement of the laws the Commission administers." Trans-Alaska Pipeline Authorization Act, Pub. L. 93-153, 87 Stat.

6

576, 591 (1973). Congress found that "the investigative and law enforcement responsibilities of the Federal Trade Commission ha[d] been restricted and hampered because of inadequate legal authority" and that as a result, "significant delays ha[d] occurred in a major investigation into the legality of the structure, conduct, and activities of the petroleum industry, as well as in other major investigations designed to protect the public interest." *Id.* In these amendments, Congress gave the FTC significant new authority to represent itself in federal court—including, for the first time, in civil penalty actions. New Section 5(m) provided that:

> Whenever in any civil proceeding involving this Act the Commission is authorized or required to appear in a court of the United States, *or to be represented therein by the Attorney General . . . , the Commission may elect to appear in its own name by any of its attorneys* designated by it for such purpose, after formally notifying and consulting with and giving the Attorney General 10 days to take the action proposed by the Commission.

87 Stat. 576, 592 (emphasis added). Congress also amended Section 16 to specifically authorize Commission enforcement of Section 5(*l*):

> Whenever the Federal Trade Commission has reason to believe that any person, partnership, or corporation is liable to a penalty under section 14 or under subsection (*l*) of section 5 of this Act, it shall—
>> (a) certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for the enforcement of the provisions of such section or subsection; or
>> (b) after compliance with the requirements with section 5(m), *itself cause such appropriate proceedings to be brought.*

*Id.* (emphasis added). These new provisions authorized the FTC to bring Section 5(*l*) civil penalty actions itself if the FTC notified and consulted with DOJ, and DOJ did not take action within 10 days.

Congress also amended Section 5(*l*), increasing the maximum penalty for each violation to $10,000, making such penalties available not only for violations of cease-and-desist orders but for violations of *any* order of the Commission, and empowering district courts "to grant

7

mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission." *Id.* at 591.

Describing these various provisions, the House Conference Report stated that the provisions "increased the civil penalty for violating a final order of the Commission . . . and gave the Commission authority to represent itself if the Attorney General failed to do so after ten days notice." H.R. Rep. No. 93-624 (1973) (Conf. Rep.), 1973 WL 12654, at *2524. Section 5(*l*) has not been amended since.[4] *See* 15 U.S.C. § 45(*l*).

**The 1975 Amendments.** In 1975, Congress continued its trend of strengthening the FTC's enforcement powers, significantly revamping and expanding the FTC Act provisions governing the FTC's litigating authority and authorizing a new type of civil penalty. FTC Improvement Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975).

First, Congress consolidated the existing procedures governing when and how the Commission may represent itself—which had been split across two provisions, Section 5(m) and Section 16—into a substantially revised Section 16 and repealed Section 5(m). *Id.* at 2199-2200.[5] Prior to this amendment, Section 16 only referred to Sections 5(*l*) (civil penalties for Commission order violations) and Section 14 (criminal penalties for certain false advertising). The revised Section 16 was expanded to encompass all of the new enforcement actions added to the Act as part of the 1975 Amendments—which included new civil penalty actions, as discussed below. The revised Section 16 set forth a comprehensive framework for the "[c]ommencement, defense, intervention and supervision of litigation and appeal by Commission or Attorney General" for all actions under the FTC Act. 15 U.S.C. § 56. Section 16(a) set forth the

---

[4] 7-Eleven thus is incorrect in stating that Sections 5(*l*) and 16 "remained unchanged for almost 60 years." Dkt. 22-1 at 17.

[5] The Act included both these changes in a single section. *Id.*

procedures for civil actions, Section 16(b) addressed the same for criminal proceedings, and Section 16(c) addressed foreign litigation. As relevant here, the new Section 16(a)(1) stated:

> [I]f—
>> (A) before commencing, defending, or intervening in, any civil action involving this Act *(including an action to collect a civil penalty)* which the Commission, *or the Attorney General on behalf of the Commission,* is authorized to commence, defend, or intervene in, the Commission gives written notification and undertakes to consult with the Attorney General with respect to such action; and
>>
>> (B) the Attorney General fails within 45 days after receipt of such notification to commence, defend, or intervene in, such action;
>
> *the Commission may commence, defend, or intervene in, and supervise the litigation of, such action* and any appeal of such action *in its own name by any of its attorneys* designated by it for such purpose.

FTC Improvement Act, 88 Stat. 2183, 2199 (emphasis added). In addition, Section 16(a)(2) provided the FTC "exclusive" authority to litigate the bulk of federal court matters that arise under the FTC Act including actions for injunctive relief, consumer redress for unfair or deceptive acts or practices, and judicial review of Commission rules.[6] *Id.* Section 16(a)(5) further emphasized that "[t]he provisions of this subsection shall apply notwithstanding chapter 31 of title 28, United States Code [which sets forth the authority of the Attorney General], or any other provision of law." *Id.* at 2200. Two members of the Senate Conference Committee described these changes as an "expansion of traditional litigating authority of the Federal Trade Commission [that] will not continue the process of centralizing the authority of the Attorney General over litigation involving the United States Government." S. Rep. 93-1408 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 7755, 7770-71. These provisions of Section 16 remain in force today. *See* 15 U.S.C. § 56(a).

---

[6] Section 16(a)(2) states that in the listed types of civil actions, "the Commission shall have exclusive authority to commence or defend, and supervise the litigation of, such action and any appeal of such action in its own name by any of its attorneys designated by it for such purpose, unless the Commission authorizes the Attorney General to do so." 15 U.S.C. § 56(a)(2).

Second, Congress added new civil penalty provisions to the FTC Act. In new Section 5(m), Congress authorized civil penalties against "any person, partnership, or corporation" that *knowingly* violates certain Commission rules or Commission orders involving unfair or deceptive acts or practices. FTC Improvement Act, 88 Stat. 2183, 2200-2201; 15 U.S.C. § 45(m). At the same time, Congress codified the Commission's authority to promulgate rules regarding unfair or deceptive acts or practices in a new Section 18 of the Act. FTC Improvement Act, 88 Stat. 2183, 2193-2298; 15 U.S.C. § 57a.

Section 5(m)(1)(A) stated that "the Commission may commence a civil action to recover a civil penalty in a district court" against a person who knowingly violates any rule promulgated under the FTC Act with respect to an unfair or deceptive act or practice. *See* 15 U.S.C. § 45(m)(1)(A). Section 5(m)(1)(B) gave the Commission similar authority to commence a civil action for a knowing violation of a cease-and-desist order with respect to unfair or deceptive acts or practices. *See* 15 U.S.C. § 45(m)(1)(B). Importantly, the new civil penalty relating to order violations extended to non-parties to the original Commission proceeding—significantly expanding the scope of conduct that could trigger civil penalty liability.[7]

**The 1994 Amendments.** In 1994, Congress made certain amendments to Section 5(m). In recognition of the fact that the provision authorized penalties against persons, partnerships or

---

[7] Under the new provision, once the Commission determines in a particular proceeding that a certain practice is an unfair or deceptive practice, and issues a cease-and-desist order, the FTC may commence an action to obtain civil penalties from any person or entity who engages in that practice—including non-parties to the original proceeding. A member of the Conference Committee explained that "[s]ometimes, in dealing with a joint scheme, the Commission will proceed against only some of the persons involved in the joint action. We have added a new provision which will now enable the FTC to seek civil penalties in court against the other persons involved in the scheme but not technically parties to the initial FTC proceeding and thus not technically subject to the cease-and-desist order." 120 Cong. Rec. H41405-41409, 41407 (daily ed. Dec. 19, 1974), *available at* https://www.congress.gov/bound-congressional-record/1974/12/19/house-section.

corporations that had not previously been subject to the cease-and-desist order, Congress added that such penalties were not available in the case of "consent orders." FTC Amends. Act of 1994, Pub. L. No. 103-312, 108 Stat. 1691 (1994). It also gave defendants in such cases the ability to challenge the Commission's earlier legal findings. *Id.*

In sum, the various amendments to the FTC Act over the years created a robust civil penalty enforcement scheme with roles for both the FTC and DOJ. Section 5(*l*), the provision under which this case was brought, authorizes penalties for violations of *any* Commission order, whether the violation involves unfair methods of competition or unfair or deceptive acts or practices. 15 U.S.C. § 45(*l*)*; see AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 77 (2021). The current Section 5(m) authorizes penalties for a different type of violation of the FTC Act not at issue in this matter: *knowing* violations by anyone of Commission rules or cease-and-desist orders (except consent orders) involving unfair or deceptive acts or practices, including where the person or entity was not a party to the cease-and-desist order defining the particular practice as unfair or deceptive. 15 U.S.C. § 45(m); *see AMG*, 593 U.S. at 77. Section 16(a), in turn, defines when the Commission or the Attorney General may bring "any civil action" under the FTC Act, including civil penalty actions. 15 U.S.C. § 56(a). As the FTC Act expanded over time to include new types of civil penalty actions, such as those brought pursuant to Section 5(*l*) or 5(m), Congress elected not to add references to each new type of action; instead, it captured those with a general reference to "any civil action . . . including an action to collect a civil penalty." *Id*. The FTC and DOJ have been bringing civil penalty cases under Sections 5(*l*) and 5(m) consistent with these statutory procedures for over 50 years, and courts uniformly have agreed that the FTC has authority to bring these cases itself if DOJ does not. *See, e.g.*, *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1234 n.38 (11th Cir. 2018) ("The Commission can bring [a Section

11

5(*l*)] action itself . . . in accordance with the criteria in [Section 16(a)]."); *see also infra*, at p. 25

(citing many cases ordering 5(*l*) civil penalties in FTC-initiated cases since the 1975

Amendments to Section 16, including for violations of consent orders in unfair competition

cases).

**LEGAL STANDARD**

7-Eleven does not specify the legal standard for its motion to dismiss, stating only that it

seeks dismissal "pursuant to Federal Rule of Civil Procedure 12(b)." Dkt. 22 at 1. A

Rule 12(b)(6) motion tests the legal sufficiency of a complaint and should not be granted "unless

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (cleaned up). The complaint must be

construed in the light most favorable to the plaintiff and "the court must assume the truth of all

well-pleaded allegations." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).

Where, as here, the complaint "state[s] a claim to relief that is plausible on its face," a court

should deny a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Although 7-Eleven does not argue for dismissal on jurisdictional grounds under Rule

12(b)(1), this Court has jurisdiction because the Complaint was filed by a federal agency to

enforce a federal statute. *See* 28 U.S.C. §§ 1331, 1337(a), 1345, 1355; 15 U.S.C. §§ 45(*l*), 56(a).

7-Eleven's motion addresses the FTC's authority to bring this civil penalty action under certain

provisions of the FTC Act, but does not raise a jurisdictional challenge to the court's authority.

Unless Congress "clearly states that a threshold limitation on a statute's scope shall count as

jurisdictional," such a limitation "is an element of a plaintiff's claim for relief, not a

jurisdictional issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006); *Fernandez v.*

*Centerplate/NBSE*, 441 F.3d 1006, 1009 (D.C. Cir. 2006). Here, Sections 5(*l*) and 16 of the FTC

12

Act set forth "ordinary, run-of-the-mill" substantive and procedural requirements "without restricting a court's authority." *See Jackson v. Modly*, 949 F.3d 763, 777 (D.C. Cir. 2020) (cleaned up). The Court should thus treat 7-Eleven's motion as a 12(b)(6) motion for failure to state a claim. Whether evaluated under 12(b)(1) or 12(b)(6), 7-Eleven's motion should be denied.

## ARGUMENT

7-Eleven's motion to dismiss has no merit. 7-Eleven claims that only the United States, through DOJ, can bring a civil penalty action for violation of a Commission order under Section 5(*l*) of the FTC Act. *See* 15 U.S.C. § 45(*l*); Dkt. 22-1 at 17-22.[8] The plain text of the Act contradicts that argument, which no court has endorsed and which contravenes decades of consistent FTC and DOJ practice.

Section 16(a)(1) sets forth authority for the FTC, in certain circumstances, to represent itself in "any civil action involving this subchapter (including an action to collect a civil penalty)." 15 U.S.C. § 56(a)(1). The civil penalty actions enumerated under the relevant subchapter include actions brought under Section 5(*l*). While the Court need not go further than the FTC Act's plain text and structure, the Act's statutory and legislative history further confirms that Section 16(a)(1) authorizes the FTC to bring Section 5(*l*) civil penalty actions itself. No court has read the Act to carve out Section 5(*l*) from the authority and procedures established in Section 16. Indeed, Congress's purpose in 1975 was to strengthen enforcement, including in civil penalty matters, by giving the FTC greater authority to litigate matters itself. 7-Eleven's reading of the FTC Act is untethered from the statutory text and structure, and is

---

[8] 7-Eleven's motion does not claim the FTC failed to follow Section 16(a)(1)'s notice-and-delay process and, indeed, the FTC did follow that process.

13

contrary to numerous court interpretations, more than fifty years of DOJ and FTC practice, and the Act's legislative history. The Court should deny 7-Eleven's motion to dismiss.

## THE COMMISSION HAS AUTHORITY TO BRING THIS CIVIL PENALTY SUIT

### A. Section 16 is comprehensive and specifies when DOJ or the FTC has authority to bring cases arising under the FTC Act.

Section 16 comprehensively sets forth the respective litigating authority of the FTC and DOJ in civil, criminal, appellate, and international matters relating to the FTC Act. *See* 15 U.S.C. § 56. The title and structure of Section 16 confirm its comprehensive sweep: "Commencement, defense, intervention and supervision of litigation and appeal by Commission or Attorney General." *Id.*; *see Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (cleaned up). Section 16(a) sets forth the "[p]rocedure for exercise of authority to litigate or appeal" of all civil actions. 15 U.S.C. § 16(a). Section 16(b) covers "[c]ertification by Commission to Attorney General for criminal proceedings." 15 U.S.C. § 56(b). Section 16(c) concerns "foreign litigation." 15 U.S.C. § 56(c). And the authority and procedures in Section 16 apply to the many sections and subsections of the FTC Act that establish substantive authority to initiate litigation, including to seek civil penalties. *See, e.g.*, 15 U.S.C. §§ 45(*l*), 45(m), 50.

7-Eleven ignores the comprehensive nature of Section 16 in asserting that "Congress has carved out just a few, narrow instances in which FTC attorneys may proceed on behalf of the Commission, none of which are applicable here." Dkt. 22-1 at 12. As discussed, Section 16 was the result of Congress's intention to expand FTC authority to litigate, not narrow it. *See supra* pp. 7-11. To support its narrow view of FTC litigating authority, 7-Eleven invokes the Attorney General's default authority to represent the United States and federal agencies in

14

litigation. Dkt. 22-1 at 11-12 (citing 28 U.S.C. §§ 516 and 519, and 5 U.S.C. § 3106). But Section 16 gives the FTC authority as to all civil litigation matters involving the agency, providing the FTC with "exclusive" authority to litigate the bulk of federal court matters that arise under the FTC Act—including actions for injunctive relief (Section 13(b)) or for consumer redress (Section 19), and appeals from Commission orders (Section 5(c))—and setting up a system of shared authority with DOJ as to all other civil litigation matters. *See* 15 U.S.C. § 56(a)(2) (exclusive FTC authority); (a)(1), (3) (shared authority); Dkt. 22-1 at 8. The statutory provisions invoked by 7-Eleven all begin with an important caveat: "except as otherwise provided by law." *See* Dkt. 22-1 at 11-12 (citing 28 U.S.C. §§ 516 and 519, and 5 U.S.C. § 3106). Section 16 is just such a law. Indeed, Section 16(a)(5)—a provision 7-Eleven entirely ignores—states that Section 16(a) "shall apply notwithstanding chapter 31 of title 28, or any other provision of law." 15 U.S.C. § 56(a)(5). Chapter 31 of title 28 includes 28 U.S.C. §§ 516 and 519, making it clear that Section 16 is controlling.

> **B.    Section 16(a)(1) specifically authorizes this civil penalty action.**

The issue before the Court is the interaction between Section 5(*l*) of the FTC Act, which authorizes civil penalties for violations of Commission orders of any kind, and Section 16(a)(1), which governs the respective roles of the Commission and DOJ in bringing litigation, including civil penalty actions. When construing a statute, such as the FTC Act, courts must "give effect, if possible, to every clause and word of a statute, rather than [] emasculate an entire section," *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (cleaned up), and must construe separate provisions of a statute "in harmony, not set them at cross-purposes," *Jones v. Hendrix*, 599 U.S. 465, 478 (2023); *see also AMG*, 593 U.S. at 77 (emphasizing the importance of looking to "the structure of the [FTC] Act," and the "subject matter" of its provisions in interpreting a given provision's meaning). Accordingly, Sections 5(*l*) and

16(a)(1) must be read together, and in connection with other relevant provisions of the FTC Act, to create a "coherent enforcement scheme." *AMG*, 593 U.S. at 78.

When these provisions are read together, they plainly provide that the FTC has the authority to bring this case. This is "an action to collect a civil penalty" which "the Attorney General on behalf of the Commission[] is authorized to commence," and Section 16(a)(1) specifies that "the Commission may commence" such an action "in its own name by any of its attorneys" once the FTC notifies DOJ and DOJ does not take action within 45 days. 15 U.S.C. § 56(a)(1)(A), (B). Section 16(a)(1) confers litigating authority to bring civil penalty actions authorized by other provisions of the Act—including those that "the Commission" is authorized to commence, e.g., 15 U.S.C. § 45(m), and those that DOJ can bring, e.g., 15 U.S.C. § 45(*l*). There is no third category of civil actions arising under the FTC Act that DOJ can bring independently of Section 16(a)(1). Read in context, litigation "on behalf of the Commission" means all litigation under the FTC Act that the Attorney General is authorized to undertake.[9]

Statutory history and context confirm that Section 16 encompasses Section 5(*l*) actions. At the time Section 16(a)(1) was enacted, Section 5(*l*) had been the FTC Act's only civil penalty provision for cease-and-desist order violations for decades.[10] And the predecessor provisions to the current Section 16(a)(1) indicate that Congress viewed the Attorney General to be "represent[ing]" the FTC when the Attorney General brought 5(*l*) civil penalty actions. *See supra* p. 7. The 1973 version of Section 16 specifically referenced Section 5(*l*) actions and

---

[9] Section 16(b), which addresses procedures for criminal referrals to the Attorney General, undercuts any notion that Congress intended to exclude from Section 16 actions brought by the Attorney General when not acting as the FTC's legal representative. *See* 15 U.S.C. § 56(b).
[10] Section 10, which was part of the original 1914 FTC Act, authorizes civil penalties for failure to file certain reports with the Commission.

provided that the requirements of then-Section 5(m)—which applied to civil proceedings where the Commission "is represented therein by the Attorney General"—must be complied with in Section 5(*l*) matters. *See* Trans-Alaska Pipeline Authorization Act, 87 Stat. 576, 592. From 1973 to 1975, the FTC Act addressed the Commission's and DOJ's respective enforcement roles in two separate provisions, Section 5(m) and Section 16. The 1975 Amendments merged former Section 5(m) into an expanded Section 16 that encompassed "any civil action involving this subchapter (including an action to collect a civil penalty)," and added a new Section 5(m) that gave the FTC authority to seek civil penalties for knowing violations of certain Commission rules or orders. 15 U.S.C. § 56(a)(1). As of the 1975 Amendments, Sections 5(*l*) and 5(m) authorize courts to impose civil penalties. *See AMG*, 593 U.S. at 77 (Section 5(*l*) "gave district courts the authority … to impose limited monetary penalties;" Section 5(m) "provid[es] court-ordered monetary penalties."). Section 16(a), in turn, controls whether the Commission or the Attorney General may bring a civil penalty action and prescribes the procedures for doing so. 15 U.S.C. § 56(a)(1). As discussed further below, for decades, courts, the FTC, and DOJ all have understood that these provisions authorize the FTC to bring Section 5(*l*) civil penalty cases if DOJ does not take action on the FTC's referral.

    **C.**    **7-Eleven's contrary position is wrong.**

        **1.**    **7-Eleven ignores key text in Section 16(a)(1) and improperly reads Sections 5(*l*) and 5(m) in isolation from the rest of the statute.**

7-Eleven contends that Section 16(a)(1) implicitly excludes Section 5(*l*) civil penalty actions because those actions, 7-Eleven claims, do not involve the Attorney General acting "on behalf of the Commission." Dkt. 22-1 at 13; 15 U.S.C. § 56(a)(1). Specifically, 7-Eleven asserts that a Section 5(*l*) "civil action brought by the Attorney General" cannot be "on behalf

of the Commission" because any resulting civil penalties accrue and are paid to the United States. Dkt. 22-1 at 13-15. That argument fails on multiple levels.

To begin, 7-Eleven ignores Section 16(a)(1)'s express statement that it covers "any civil action involving this subchapter (including an action to collect a civil penalty)." *See* Dkt. 22-1 at 13 (paraphrasing 15 U.S.C. § 56(a)(1) and employing ellipses in place of this text). The civil penalty actions set forth in the relevant subchapter, of course, include those brought under Section 5(*l*).

There is no merit to the distinction 7-Eleven attempts to draw between "suits the Attorney General may bring on behalf of the United States and those that may be brought on behalf of the Commission," or to its argument that the former category falls outside the scope of Section 16.[11] Dkt. 22-1 at 14-15. As noted above, Section 16(a)(1) applies both to (1) civil penalty actions "which the Commission . . . is authorized to commence," such as those actions authorized by Section 5(m), and (2) civil penalty actions "which . . . the Attorney General on behalf of the Commission[] is authorized to commence," such as those actions authorized by Section 5(*l*). 15 U.S.C. § 56(a)(1). In other words, Section 16(a)(1) covers all potential civil penalty actions authorized under the FTC Act, regardless of who may initiate such actions. Indeed, Section 16(a)(5) makes it clear that Section 16 controls: it says the provisions of Section 16(a) "shall apply notwithstanding . . . any other provision of law." 15 U.S.C. § 56(a)(5). There is no evidence Congress intended to exclude civil penalty actions for violations of Commission orders from Section 16(a)(1)'s broad scope, much less in the

---

[11] 7-Eleven also misleadingly suggests that Section 5(*l*) itself says "on behalf of the United States." *See, e.g.*, Dkt. 22-1 at 24 (claiming that "Section 5(*l*) states affirmatively and unequivocally that actions like [this one] may only be 'brought by the Attorney General of the United States' *on behalf of the United States*.") (emphasis added); *see also id.* at 13. Those words appear nowhere in Section 5(*l*).

backdoor fashion 7-Eleven suggests.[12] Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

In any event, 7-Eleven's argument that Section 16 excludes provisions referencing civil actions the United States can bring runs headlong into contrary authority 7-Eleven conveniently ignores. Section 10 of the FTC Act, 15 U.S.C. § 50, authorizes civil penalties for failing to file certain required reports with the Commission, and provides that these penalties "shall be recoverable in a civil suit in the name of the United States" and that "[i]t shall be the duty of the various United States attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of the forfeitures." By 7-Eleven's logic, Section 10 civil penalty actions would fall outside the scope of Section 16, leaving the Commission with no authority to bring such cases itself. But the Eighth Circuit held the opposite in *Top Value Meats, Inc. v. FTC*, 586 F.2d 1275, 1282-83 (8th Cir. 1978). The court of appeals there concluded that Section 16(a)(1)'s "notice and delay requirements" applied to a suit for Section 10 penalties, and that an action "by the Commission would have been appropriate" if those requirements were satisfied. *Id.* at 1283. Section 10 and *Top Value Meats* thus further refute 7-Eleven's argument that civil penalty actions can be brought only by DOJ if the provision authorizing the civil penalty references suit by the Attorney General.

---

[12] None of the examples 7-Eleven discusses, Dkt. 22-1 at 14, even hints at such an intent by Congress. The question is not whether DOJ acts on behalf of the Commission in other ways in various contexts—such as when DOJ represents the FTC before the Supreme Court or in seeking writs of mandamus—but whether Congress intended to include Section 5(*l*) actions in "any civil action (including an action for a civil penalty) which . . . the Attorney General on behalf of the Commission, is authorized to commence." As discussed, Congress plainly did.

That Section 5(*l*) civil penalties accrue and are paid to the United States likewise does not support 7-Eleven's argument. *See* Dkt. 22-1 at 13-15 (citing 15 U.S.C. § 45(*l*)). *All* civil penalties collected by the FTC are paid into the United States Treasury under the Miscellaneous Relief Act, including penalties under Section 5(m), which does not state that the penalties accrue to the United States or are paid to the United States. *See* 31 U.S.C. § 3302; 15 U.S.C. § 45(m). 7-Eleven maintains that the entity to whom civil penalties accrue and are paid determines whether the FTC or DOJ can bring suit, *see* Dkt. 22-1 at 13-15, but if that were true then the FTC would not be able to represent itself in Section 5(m) actions. Yet 7-Eleven concedes, as it must, that the FTC can bring Section 5(m) actions.

In short, 7-Eleven's reading cannot be squared with the text and structure of the FTC Act or the requirement that Sections 5(*l*) and 5(m) be read in harmony with Section 16(a)(1). *See* Part B, *supra* at 15. The Court should reject it.

### 2.      7-Eleven misreads the FTC Act's statutory history.

7-Eleven contends that the 1973 Amendments created ambiguity about whether the Commission may bring its own civil penalty actions under Section 5(*l*), and that the 1975 Amendments removed that ambiguity by eliminating any such authority. Dkt. 22-1 at 18-21. That is wrong several times over.

The 1973 Amendments to Section 16 unambiguously gave the Commission authority to bring civil penalty actions under the procedures prescribed in the Amendments' version of Section 5(m). Congress's stated intention was to strengthen the Commission's enforcement authority through these Amendments. *See supra* p. 7-8 (explaining that Congress had found the FTC's enforcement activities "ha[d] been restricted and hampered because of inadequate legal authority," and sought to address that by expanding the FTC's authority). Specifically, Congress preserved an express reference to Section 5(*l*) and provided that the Commission may "cause

20

such appropriate proceeding to be brought," if the Commission followed Section 5(m)'s notification procedures and the Attorney General declined to take action after ten days. Trans-Alaska Pipeline Authorization Act, 87 Stat. 576, 592.

7-Eleven also is wrong in claiming that Section 16's cross-reference to Section 5(m) "was somewhat surprising because neither the language discussing the amendments nor the Congressional comments regarding the changes mentioned give the Commission authority to seek civil penalties for violation of Commission orders." Dkt. 22-1 at 19. In fact, the conference report accompanying the 1973 Amendments explained that the final version of the Amendments "gave the Commission authority to represent itself in court if the Attorney General failed to do so after ten days notice."[13] 1973 WL 12654, at *2524. There was no ambiguity.[14]

7-Eleven further errs in asserting that the 1975 Amendments eliminated the Commission's authority to seek Section 5(*l*) civil penalties on its own. 7-Eleven bases its argument on the observation that prior to 1975, Section 16 specifically referenced Section 5(*l*), but the 1975 Amendments removed that language. Dkt. 22-1 at 20-21. Yet 7-Eleven fails to

---

[13] Although the plain text is sufficient, legislative history confirms that Congress intended Section 16(a)(1) to authorize the Commission to bring Section 5(*l*) penalty actions. "[W]hile the immediate statutory text is the 'best evidence' of congressional intent," it is not "the only such evidence." *Tataranowicz v. Sullivan*, 959 F.2d 268, 276 (D.C. Cir. 1992). Here, the statutory language clearly supports the FTC's position. But even if a statute's language "does not compel either side's interpretation, the [c]ourt looks to the statute's legislative history to determine its plain meaning." *U.S. Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133, 146 (D.D.C. 2015) (Moss, J.), *aff'd sub nom. U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131 (D.C. Cir. 2017).

[14] Conference reports are especially persuasive evidence of Congress's intent because they "represent[] the final word on the final version of the statute" and "must be signed by a majority of both delegations from the House and Senate who have resolved the differences between the two chambers." *Planned Parenthood Fed. of Am., Inc. v. Heckler*, 712 F.2d 650, 657 n.36 (D.C. Cir. 1983); *accord Goldring v. District of Columbia*, 416 F.3d 70, 77 (D.C. Cir. 2005); *see also Moore v. District of Columbia*, 907 F.2d 165, 175 (D.C. Cir. 1990) (describing conference report as "the strongest evidence" of congressional intent).

grapple with a key change Congress made through the 1975 Amendments, and Congress's reasons for making the change. Congress replaced Section 16's prior references to "a penalty under section 14 or under subsection (*l*) of section 5 of this act" with *broader* language. Specifically, the reference to Section 5(*l*) was replaced with "any civil action involving this subchapter (including an action to collect a civil penalty)." 15 U.S.C. § 56(a)(1)(A). The specific reference in the former provision to Section 14, a criminal penalty provision allowing for fines and imprisonment, was also replaced by a new provision in Section 16 encompassing all "criminal proceedings." 15 U.S.C. § 56(b).

The accompanying conference report confirms Congress's intention to broaden the scope of Section 16, stating that "[i]n any other civil action involving the Federal Trade Commission Act, the Commission may appear in its own name" if "the Commission gives written notification and undertakes to consult with the Attorney General and thereafter the Attorney General fails within 45 days after receiving such notification to commence, defend, or intervene in, such action." S. Rep. No. 93-1408, 1974 WL 11710.[15] The reason for the broadening is that in the very same set of amendments, Congress added an additional type of civil penalty, set forth in a new Section 5(m). Rather than enumerate a growing list of specific penalty provisions in Section 16, Congress instead elected to use broad language sweeping in all civil penalty actions authorized in the FTC Act. If Congress had intended to eliminate the Commission's preexisting authority to seek Section 5(*l*) penalties, it could have qualified

---

[15] 7-Eleven asserts (Dkt. 22-1 at 19) that Congress intended to curtail the FTC's ability to represent itself after the initial decisions in *FTC v. Consolidated Foods Corp.,* 396 F. Supp. 1344 (S.D.N.Y. 1974) ("*Consolidated Foods I*") and *FTC v. Lukens Steel Co.,* 454 F. Supp. 1182 (D.D.C. 1978). The conference report, however, mentions neither case, and the initial decision in *Lukens Steel* was issued months *after* the FTC Improvement Act was enacted. *See FTC v. Lukens Steel Co.*, Civil Action No. 74-9226, 1975 WL 881 (D.D.C. Apr. 5, 1975).

Section 16(a)(1)'s reference to "civil penalty" with a phrase like "except under subsection (*l*) of section 5 of this act." *See Whitman*, 531 U.S. at 468. It did not. "Fundamental changes in the scope of a statute are not typically accomplished with so subtle a move." *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 575 U.S. 650, 661 (2015).

**D.      Case law and agency practice confirm the FTC's authority to bring this case.**

Consistent with Section 16(a)(1)'s clear text, for decades, courts, the FTC, and DOJ have understood Section 16 to permit the FTC to bring Section 5(*l*) civil penalty cases if DOJ does not take action on the referral within 45 days. This long history of consistent understanding bolsters the FTC's interpretation here. *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 580 (2010) (rejecting interpretation of statute because, among other reasons, it "is inconsistent with common practice in the federal courts"); *Lamie v. U.S. Tr.*, 540 U.S. 526, 537 (2004) (noting that the Court's interpretation "accords with common practice").

As 7-Eleven acknowledges, *see* Dkt. 22-1 at 13, the FTC began using Section 16's civil penalty litigating authority shortly after the 1973 Amendments to the FTC Act. *See Lukens Steel Co.*, 454 F. Supp. 1182); *FTC v. Consol. Foods Corp.*, 396 F. Supp. 1353 (S.D.N.Y. 1975) ("*Consol. Foods II*"). In *Consolidated Foods I*, for example, the court noted that the Commission was proceeding under "new statutory authority to sue in its own right" and that the "Commission was given this authority so as to ensure prompt enforcement of the laws within its jurisdiction." 396 F. Supp. at 1346, 1348. The court found the defendant liable for violating a Commission cease-and-desist order, *id.* at 1353, and in a separate decision, assessed $25,000 in civil penalties under Section 5(*l*), *Consolidated Foods II*, 396 F. Supp. at 1357. 7-Eleven tries to discount these two examples as "test cases," Dkt. 22-1 at 19, but in fact they represent the beginning of a long history of the FTC representing itself in civil penalty actions—under Section 5(*l*), as well as Section 5(m)—with court and DOJ approval.

Courts have uniformly observed that the FTC has the authority to bring Section 5(*l*) civil penalty cases if DOJ does not act upon the agency's referral. While the question was not squarely presented for decision, these courts described the relationship between Section 16 and Section 5(*l*) consistently with the plain language of those provisions. The Eleventh Circuit recognized that "Section 5(*l*) directs the Commission to call upon the United States Attorney General to commence a civil-penalty action," but "[t]he Commission can bring the action itself, however, in accordance with the criteria in [Section 16(a)]." *LabMD, Inc.*, 894 F.3d at 1234 n.38. The Fifth Circuit explained that "after [Section 16(a)(1)'s] 45 day reservation of authority for the Attorney General to file suit has expired," the FTC and the Attorney General "have concurrent authority to institute suit." *United States v. Restland Funeral Home, Inc.*, 51 F.3d 56, 57 (5th Cir. 1995);[16] *see also FTC v. Credit Bureau Ctr., LLC,* 937 F.3d 764, 788 (7th Cir. 2019) ("Commission may . . . after providing notice to the Attorney General under section 16 of the FTC Act, sue someone who violates a cease-and-desist order [under Section 5(*l*)].") (Wood, C.J., dissenting). Similarly, in *Alpine Industries v. FTC*, a district court in yet another circuit explained that "Section 45(*l*) authorizes the FTC to bring actions for civil penalties and injunctive relief against any person who has violated a Commission order" while "[S]ection 56(a) sets forth the procedures for exercising the FTC's authority to litigate or appeal and governs the litigation relationship between the Department of Justice and the FTC." 40 F. Supp. 2d 938, 941 (E.D. Tenn. 1998).

---

[16] In addition, applying the pre-1973 version of Section 16, the Second Circuit held that "Sections 16 and 5(*l*) were intended to be mutually inter-dependent." *St. Regis Paper*, 355 F.2d at 695. And as discussed at p. 19, the Eighth Circuit held that compliance with Section 16's procedures was required in a civil penalty case under Section 10. *Top Value Meats,* 586 F.2d at 1283. *Top Value Meats* thus supports the FTC's reading of the statute—i.e., that Section 16(a)(1) applies even as to FTC Act provisions that reference the United States bringing the civil action, as do both Section 10 and Section 5(*l*).

Finally, for decades, courts have entered final judgments in numerous civil penalty actions brought by the FTC under Section 5(*l*). *See, e.g.*, *FTC v. Star Pipe Prods., Ltd.*, No. 1:16-cv-00755-RDM, Dkt. 3 (D.D.C. May 12, 2016); *FTC v. Toys "R" Us, Inc.*, No. 1:11-cv-00635-RMC (D.D.C. Apr. 7, 2011); *FTC v. Bristol-Meyers Squibb Co.*, No. 1:09-cv-00576-EGS (D.D.C. Apr. 1, 2009); *FTC v. RHI AG*, No. cv-04-0524 (D.D.C. Apr. 1, 2004); *FTC v. Columbia/HCA Healthcare Corp.*, No. cv-98-1889 (D.D.C. Aug. 6, 1998); *FTC v. CVS Corp.*, No. cv-98-0773 (D.D.C. Mar. 30, 1998); *FTC v. Schnuck Mkts., Inc.*, No. 4:97CV01830CEJ (E.D. Mo. Sept. 16, 1997); *FTC v. Federated Dep't Stores, Inc.*, No. cv-95-1965 (D.D.C. Dec. 8, 1995); *FTC v. Onkyo USA Corp.*, No. 95-1378-LFO, 1995 WL 579811 (D.D.C. Aug. 21, 1995); *FTC v. Rubus Dev. Corp*, No. cv-94-0041 (D.D.C. Jan. 12, 1994); *FTC v. Sunkist Growers, Inc.*, No. S6-2400 (D.D.C. Aug. 28, 1986).[17] While these cases involved penalties ordered following stipulated judgments, in each case the court found that it had subject matter jurisdiction, that the FTC had stated a claim, and that civil penalties were appropriate. For instance, in *FTC v. Star Pipe Products, Ltd.*, this Court held that it "has jurisdiction of the matter herein," that "[t]he Complaint asserts claims upon which relief could be granted against Defendant under Section 5(*l*) and 16(a)(1) of the Federal Trade Commission Act," and that

---

[17] These cases all involve Commission orders resolving unfair competition claims, and many of these cases ordered penalties for violations of consent orders resolving unfair methods of competition claims. *See*, *e.g.*, *Star Pipe Prods.*, No. 1:16-cv-00755-RDM, Dkt. 2 at 1; *Onkyo*, 1995 WL 1995 WL 579811, at *2. There are more Section 5(*l*) examples involving orders resolving unfair or deceptive acts or practices claims. *See, e.g.*, *FTC v. Norm Reeves, Inc.*, No. 8:17-cv-01942-JLS-DFM (C.D. Cal. Nov. 13, 2017); *FTC v. Ramey Motors, Inc.*, No. 1:14-cv-29603 (D. W. Va. Sep. 9, 2015).

"[e]ntry of the Final Judgment is in the public interest." *Star Pipe Prods.*, No. 1:16-cv-00755-RDM, Dkt. 2 at 1;[18] *see also Onkyo*, 1995 WL 579811, at *1-2.[19]

>  **E.**   **7-Eleven's remaining arguments fail.**

>  **1.**   **7-Eleven misreads Section 5(m).**

As discussed at p. 10-11, Section 5(m)(1)(B) of the FTC Act authorizes civil penalties for *any* person, partnership or corporation that *knowingly* engages in any act or practice that the Commission, in a prior *litigated* cease-and-desist order, determined was unfair or deceptive—even if the offending entity was not a party to the prior cease-and-desist order. 15 U.S.C. § 45(m)(1)(B). The provision does not apply to consent orders. *Id.*

7-Eleven asserts that because Section 5(m) expressly provides civil penalty authority for knowing violations of cease-and-desist orders involving unfair or deceptive acts or practices, while withholding civil penalty authority for consent orders involving such acts and practices, Congress could not have intended to authorize the Commission to seek civil penalties for violations of *other* kinds of orders—including consent orders involving unfair competition. Dkt. 22-1 at 15, 21. That is flatly wrong. The fact that Congress created new civil penalty authority for *knowing* violations of litigated orders concerning unfair or deceptive acts or practices by non-parties to the Commission proceeding is fully consistent with preserving the FTC's authority to seek Section 5(*l*) civil penalties for a party's violation of any Commission order. The FTC litigating authority set forth in Section 16(a)(1) applies to both Section 5(*l*) and Section 5(m)

---

[18] The final judgments cited in this paragraph and this Court's order entering judgment in *Star Pipe Products* are compiled in Appendix A hereto.

[19] The *Onkyo* court adopted the reasoning in the parties' joint statement about why the judgment was in the public interest, which included that "[u]nder Section 16(a)(1) of the FTC Act, the Commission may bring any civil action under the FTC Act, including an action for civil penalties, in its own name if it notifies the Attorney General before commencing such an action and the Attorney General fails within 45 days of such notification to commence the litigation of the contemplated action." *Id.* at *2.

penalty actions. *See* pp. 15, 17-20, 22 *supra*. And the fact that Section 5(m) authorizes civil

penalties for particular kinds of violations that Section 5(*l*) does not cover says nothing about the

Commission's authority under the latter provision. Moreover, the exclusion of consent orders

under Section 5(m) serves a specific purpose not pertinent to Section 5(*l*): Because a court can

assess Section 5(m) penalties against a party that was not previously subject to a cease-and-desist

order, Congress prohibited the FTC from seeking such penalties where the prior order was not

the result of an adjudication.[20] H.R. Rep. 103-138 (1993), 1993 WL 213734, at *13-*14 (1993).

No such concern applies under Section 5(*l*), which authorizes penalties only against the named

party subject to the prior order, whether it is an adjudicated order or, like this case, a consent

order.

### 2.      7-Eleven's interpretation would compromise the comprehensive enforcement scheme created by Congress.

7-Eleven maintains that its interpretation better promotes political accountability by

placing responsibility for Section 5(*l*) civil penalty actions exclusively with DOJ. Dkt. 22-1 at

23. Here, though, Congress made the deliberate choice to increase the Commission's role in civil

penalty enforcement. *See supra* pp. 6-11. As discussed, Congress specifically authorized the

Commission to bring civil penalty actions—and other litigation—out of a desire to strengthen

enforcement of the FTC Act and better protect the public. *Id.* That authority built upon the role

Congress envisioned for the FTC from its creation, as "an expert agency" with particular

---

[20] A direct party to a Commission proceeding has already had ample opportunity to contest the proceeding and, if the party consented to an order, they waived that right. However, a non-party would not have had that opportunity. In carving out consent orders from Section 5(m)(1)(B), Congress wanted to be sure that the Commission order regarding unfair or deceptive practices was the product of an adversarial process before applying it to non-parties and triggering civil penalty liability. H.R. Rep. 103-138, 1993 WL 213734, at *13-*14. That rationale has no application to Section 5(*l*) cases. Here, 7-Eleven was a party to the Commission proceeding and knowingly agreed to the Consent Order's terms.

expertise in unfair methods of competition and staff trained "to combat monopolistic practices." *See, e.g.*, *FTC v. Cement Inst.*, 333 U.S. 683, 816 n.20 (1948) (referencing Senate Committee statement that the Commission "'will bring both to the Attorney General and to the court the aid of special expert experience and training in matters regarding which neither the Department of Justice nor the courts can be expected to be proficient'") (quoting S. Rep. No. 63-597 (1914)).

The current regime is entirely consistent with 7-Eleven's contention that political accountability requires a substantial role for DOJ. Specifically, DOJ receives notification every time the Commission seeks to bring a civil penalty action and has the opportunity to bring that case itself. Moreover, when DOJ does not take action and the Commission elects to bring a civil penalty action itself, the Commission is accountable for its actions. Whatever reasons 7-Eleven might have for preferring DOJ over the Commission as the federal government enforcer, Dkt. 22-1 at 23-24, they do not affect the Commission's legal authority to bring this case.

7-Eleven's interpretation of the FTC Act would create an "[in]coherent enforcement scheme" that is contrary to Congress's design and unworkable in a practical sense. *See AMG*, 593 U.S. at 78. Congress conferred on the Commission an important role in *all* civil penalty actions under the FTC Act through the notice and delay procedure and the Commission's authority to represent itself.[21] *See* 15 U.S.C. § 56(a)(1). This role is an important complement to the Commission's exclusive authority to enforce the FTC Act's prohibition on unfair methods of competition and unfair or deceptive acts or practices in the first instance. *See St. Regis Paper*,

---

[21] The policy advantages of exclusive DOJ enforcement that 7-Eleven identifies, Dkt. 22-1 at 23, do not have sway here, where Congress purposefully gave litigating authority to both the FTC and DOJ.

355 F.2d at 693, 695.[22] As the Second Circuit has recognized, "to require the Commission to relinquish control over a carefully formulated order at the instant it is issued would defeat the purpose of granting it wide discretion in determining the type of order best suited to combat the competitive ills it uncovers*." Id.* at 695. The Commission's continuing involvement in enforcement of its orders—whether representing itself or not—plays a vital role, including by helping the Commission to detect violations of its orders in the first place. "To relinquish jurisdiction to the Attorney General after the issuance of a cease and desist order would be most unrealistic, for the Commission alone knows the scope of its orders and has been provided with staffs to institute proceedings and to follow up decrees and police their obedience[,] which are expected to take the lead in following through to effective results." *Id.* at 696 (cleaned up). The FTC Act's text and history embody these considerations; the generalized and speculative policy analysis put forth by 7-Eleven contravenes the statute and has no bearing here. *See* Dkt. 22-1 at 23.

**CONCLUSION**

For the foregoing reasons, the Court should deny 7-Eleven's Motion to Dismiss.

---

[22] Indeed, the Second Circuit emphasized that "[i]t is highly unlikely that Congress intended to grant the Attorney General plenary power to punish violations of Commission orders in view of the fact that when it enacted Sections 5(a) and (b) of the FTCA, 15 U.S.C. §45 (a), (b), it granted the FTC exclusive authority to enforce the proscription against unfair methods of competition and deceptive acts or practices in commerce and, also, granted the FTC exclusive authority to issue orders to cease and desist from such practices." *St. Regis Paper*, 355 F.2d at 693.

Dated: March 6, 2024                    Respectfully submitted,

                                   /s/Laura R. Hall
                                   Laura R. Hall
                                   Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
202-326-3282
lhall1@ftc.gov

Maribeth Petrizzi (D.C. Bar 435204)
Assistant Director

Eric D. Rohlck (D.C. Bar 419660)
Deputy Assistant Director

James H. Weingarten (D.C. 985070)
Chief Trial Counsel

Laura R. Hall
Sebastian Lorigo
Angelike A. Mina
Christine Tasso (D.C. Bar 985499)
Attorneys

Bureau of Competition

*Attorneys for Plaintiff Federal Trade Commission*