## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

> *Plaintiff,*

v.

SEVEN & I HOLDINGS, CO., LTD., *et al.*,

> *Defendants.*

Civil Action No. 23-3600 (RDM)

## MEMORANDUM OPINION AND ORDER

In this action, the Federal Trade Commission ("FTC" or "Commission") seeks civil penalties under Section 5(*l*) of the Federal Trade Commission Act ("FTC Act") from Defendants Seven & i Holdings, Co., Ltd. and 7-Eleven, Inc. (together, "7-Eleven") for alleged violations of an administrative consent order that the parties agreed to in 2018 to resolve antitrust allegations against 7-Eleven. 7-Eleven moves to dismiss, arguing that the FTC lacks authority to institute judicial enforcement proceedings under Section 5(*l*). *See* Dkt. 22. On 7-Eleven's view, only the Attorney General of the United States has that authority. The Court disagrees and, accordingly, will **DENY** the motion.

## I. BACKGROUND

For purposes of resolving 7-Eleven's motion to dismiss, the Court accepts the following factual allegations, which are set forth in the FTC's complaint and the accompanying Consent Order and Decision and Order, as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In March 2018, the FTC entered an administrative consent order against 7-Eleven to resolve antitrust claims connected to 7-Eleven's $3.3 billion acquisition of 1,100 convenience stores and associated gas stations from Sunoco LP (the "Consent Order"). The Consent Order

resolved an administrative complaint that the FTC's Bureau of Competition proposed to bring against 7-Eleven, alleging that the acquisition violated the antitrust laws by "substantially lessen[ing] competition or tend[ing] to create a monopoly in the retail sale of gasoline and diesel in 76 local markets across 20 metropolitan statistical areas." Dkt. 1 at 5–6 (Compl. ¶ 15).

In the Consent Order, the FTC sought to mitigate the anticompetitive harms of the acquisition in three ways. First, the Consent Order required that 7-Eleven divest fuel outlets in certain local markets. Second, it prohibited 7-Eleven from acquiring fuel outlets in other local markets in which 7-Eleven already had significant market share. Third, and most significantly for present purposes, it required 7-Eleven—for a period of ten years—to provide notice to the FTC before acquiring any interest (including a leasehold interest) "in any of the retail fuel outlets identified in a non-public schedule to the Consent Order." *Id.* at 6–7 (Compl. ¶¶ 17–19). Upon receiving such notice, the FTC could request that 7-Eleven provide it with additional information about the proposed acquisition, and 7-Eleven was prohibited from closing any proposed acquisition until thirty days after it had provided any additional information requested. *Id.* at 8 (Compl. ¶ 21).

The FTC alleges that 7-Eleven began violating the Consent Order's notice requirement almost immediately. The list of third-party retail fuel outlets for which notice was required (the "Relevant Notice Outlets") included an outlet in St. Petersburg, Florida, located at ███████ ███████ (the "St. Petersburg Outlet"). *Id.* at 7 (Compl. ¶ 19). Just a few months after 7-Eleven agreed to the Consent Order, 7-Eleven ███████████████████ ████████████████████. *Id.* at 9 (Compl. ¶ 24). By ███████████, 7-Eleven had ████████████████████████. *Id.* At no time during

2

this process did 7-Eleven provide the Commission with the required notice of its intention to

███ the St. Petersburg Outlet. *Id.* at 9–10 (Compl. ¶ 25).

Three years passed, during which 7-Eleven (in accordance with the terms of the Consent

Order) filed eight compliance reports with the FTC certifying that "███████████████

████████████████████████████████████████." Dkt. 1 at 10 (Compl. ¶ 26).

Meanwhile, 7-Eleven was busy revamping the St. Petersburg Outlet; it tore the existing outlet

down, rebuilt a new outlet in its place, and began operations at the site in 2020. *Id.* (Compl.

¶ 28). But 7-Eleven's ██████ interest in the property remained unreported and undetected.

Finally, in ███████, 7-Eleven ███████████████████████████████

███. *Id.* at 11 (Compl. ¶ 29). ███████████, 7-Eleven sold the St. Petersburg Outlet to a third-

party at the FTC's urging. *Id.* (Compl. ¶ 30). According to 7-Eleven, the company made only

$████████ from operating the St. Petersburg Outlet. Dkt. 22-1 at 10. The FTC, on the other

hand, estimates that 7-Eleven's violation of the Consent Order netted 7-Eleven somewhere closer

to $███████ when the proceeds from the sale of the ███████ interest and 7-Eleven's ability to

charge higher fuel prices at its other two nearby locations are taken into account. Dkt. 1 at 3

(Compl. ¶ 6).

The FTC filed suit in this Court on December 4, 2023, seeking civil penalties and

injunctive relief under 15 U.S.C. § 45(*l*). The maximum statutory penalty for violating an FTC

order is $50,120 per violation. *Id.* at 14 (Compl. ¶ 41). According to the FTC, each day that 7-

Eleven maintained an interest in the St. Petersburg Outlet constitutes a separate violation, and so

the maximum civil penalty in this case is $77,535,640. *Id.* (Compl. ¶¶ 41–42). The FTC asks

the Court to "order Defendants to pay an appropriate civil penalty amount," to "order appropriate

injunctive relief," and to "award the Commission its costs of this suit." *Id.* at 15.

In lieu of answering the complaint, 7-Eleven moved to dismiss, Dkt. 22, and the FTC opposed that motion, Dkt. 29. *See* Min. Entry (Apr. 26, 2024).

## II. LEGAL STANDARD

7-Eleven's motion to dismiss does not specify whether it is premised on Rule 12(b)(1) or Rule 12(b)(6). The parties, however, appear to agree that 7-Eleven's challenge to the FTC's authority to bring an enforcement action under Section 5(*l*) is best considered under Rule 12(b)(6) (whether the FTC has a legal claim) rather than under Rule 12(b)(1) (whether the Court has jurisdiction). *See* Dkt. 22-1 at 11 (citing *Fed. Trade Comm'n v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019); *Fed. Trade Comm'n v. Am. Vehicle Prot. Corp.*, 2022 WL 14638465, at *10 (S.D. Fla. Oct. 25, 2022)); Dkt. 29 at 19.

The Court is less sure. In an analogous case, *United States v. Providence Journal, Co.*, 485 U.S. 693 (1988), the Supreme Court considered whether a special prosecutor, appointed by a federal district court to pursue criminal contempt charges against a party, had authority to file a petition for a *writ of certiorari* in the Supreme Court. *Id.* at 699. Relying on 28 U.S.C. § 518(a), the Supreme Court concluded that the Solicitor General, acting pursuant to a delegation from the Attorney General, possessed exclusive authority to authorize the filing of a *cert* petition in any case "in which the United States is interested." *Id.* at 699–700 (quoting 28 U.S.C. § 518(a) and 28 C.F.R. § 0.20 (1987)). The Supreme Court's disposition of that case is informative. The Court wrote: "Absent a proper representative of the Government as a petitioner in this criminal prosecution, *jurisdiction* is lacking." *Id.* at 708 (emphasis added). Here, 7-Eleven's argument follows a similar logic; 7-Eleven contends that a Section 5(*l*) action seeking civil penalties for non-compliance with the Consent Order should have been brought, if at all, by the Attorney General in the name of the United States. If 7-Eleven is correct, this case would parallel

4

*Providence Journal* in important respects and would at least arguably raise a jurisdictional—as opposed to a merits—challenge. Neither party, however, addresses *Providence Journal* or whether the Supreme Court's disposition in that case is consistent with the Supreme Court's later decisions in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006), and its progeny, which have curtailed the use of jurisdictional labels in resolving threshold defenses that neither the statutory text nor Article III treat as jurisdictional.

Ultimately, however, nothing in this case turns on whether the Court treats 7-Eleven's motion as arising under Rule 12(b)(6) or Rule 12(b)(1). 7-Eleven poses a facial challenge to the complaint, so the Court need not decide whether to consider jurisdictional facts beyond the scope of the pleadings. As explained below, moreover, 7-Eleven's argument fails, regardless of whether it raises a jurisdictional or merits defense. To be sure, were the Court persuaded by 7-Eleven's arguments, the Court would need to decide whether to dismiss on the merits (under Rule 12(b)(6)) or for lack of jurisdiction and thus without prejudice (under Rule 12(b)(1)). But because 7-Eleven's argument fails as a matter of law, the Court need not resolve that question and can, instead, decide the pending motion without offering a definitive view on whether, if successful, the defense would raise a merits or jurisdictional bar.

### III. ANALYSIS

In general, the authority to represent the federal government in court rests with the Department of Justice and the Attorney General. See 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); *see also Providence Journal, Co.*, 485 U.S. at 699. Agency counsel may represent the United States in federal court

only when Congress expressly provides them with the authority to do so. Here, the parties agree that the FTC Act allocates litigating authority between the Attorney General and Commission staff and that it is the FTC Act, rather than 28 U.S.C. § 516, that controls the present dispute. The parties, however, offer very different views of how the FTC Act allocates that authority.

Under 7-Eleven's view, the Attorney General is vested with exclusive authority to bring actions for civil penalties under Section 5(*l*). In support of that view, 7-Eleven invokes the text of Section 5(*l*), which provides that a "civil penalty" for violating a final FTC order "shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States." 15 U.S.C. § 45(*l*). On 7-Eleven's telling, that provision stands in marked contrast to the very next provision of FTC Act—Section 5(m)—which authorizes the Commission to "commence . . . civil action[s] to recover . . . civil penalt[ies] in a district court of the United States." *Id.* § 45(m).

In response, the FTC invokes an entirely separate provision of the FTC Act—Section 16(a)—which permits the Commission to bring actions to collect "civil penalt[ies]" "in its own name" and using "its attorneys," so long as it first provides the Attorney General with at least 45 days' notice, and the Attorney General fails to bring such an action. *Id.* § 56(a)(1). The parties agree, moreover, that the Commission provided the Attorney General with the required notice and that he failed to bring a civil penalty action during the 45-day interval. Thus, on the FTC's telling, it was entitled to bring this "action to collect a civil penalty," *id.* § 56(a)(1)(A), after waiting the requisite 45 days.

7-Eleven is not so easily dissuaded, however. It takes issue with the Commission's reading of the statute and maintains that Section 16(a) applies only to cases that the FTC Act otherwise authorizes the Commission to bring on its own or cases in which the Attorney General

6

is authorized to sue "on behalf of the Commission." *Id.* § 56(a)(1)(A). And, according to 7-Eleven, Section 5(*l*) authorizes the Attorney General to bring an action only on behalf of the *United States*, and not on behalf of the *Commission*.

The parties' dispute, thus, poses a pure question of statutory interpretation. Before turning to the statutory text, which is ultimately controlling, *see Corner Post, Inc. v. Bd. of Govs. of Fed. Reserve Sys.*, 603 U.S. 799, 815 (2024), a brief description of the preceding versions of the relevant provisions helps set the stage.

### A.

Although the FTC Act was originally enacted in 1914, the two provisions most directly at issue here—Sections 5(*l*) and 16—were not added in any form until 1938. *See* Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111, 114, 116–17 (1938). The original version of Section 5(*l*), which does not differ substantially from the current version, provided that:

> Any person, partnership, or corporation who violates an order of the Commission to cease and desist after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States.

*Id.* at 114. The original version of Section 16, in contrast, is just a distant cousin of the current version. It provided:

> Whenever the Federal Trade Commission has reason to believe that any person, partnership, or corporation is liable to a penalty under section 14 or under subsection (*l*) of section 5, it shall certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for the enforcement of the provisions of such section or subsection.

*Id.* at 116–17. Pursuant to these authorities, the Attorney General brought several actions to collect civil penalties for violations of cease-and-desist orders over the next three decades. *See, e.g., United States v. Vitasafe Corp.*, 352 F.2d 62 (2d Cir. 1965); *United States v. Beatrice Foods*

*Co.*, 344 F. Supp. 104 (D. Minn. 1972); *United States v. Am. Greetings Corp.*, 168 F. Supp. 45

(N.D. Ohio 1958); *United States v. Standard Educ. Soc'y*, 55 F. Supp. 189, 193 (N.D. Ill. 1943).

In 1973, Congress amended the FTC Act in several relevant respects. First, it amended

Section 5(*l*) to its current form. Then, as now, the provision provided:

> Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

Pub. L. No. 93-143, § 408(c), 87 Stat. 576, 591 (1973); *see also* 15 U.S.C. § 45(*l*).

Congress also amended Section 16 in a manner that moved it closer to the current version

but that covered fewer circumstances. The 1973 version of Section 16 provided:

> Whenever the Federal Trade Commission has reason to believe that any person, partnership, or corporation is liable to a penalty under section 14 or under subsection (*l*) of section 5 of this Act, it shall—
>
> (a) certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for the enforcement of the provisions of such section or subsection; or
>
> (b) after compliance with the requirements [of] section 5(m), itself cause such appropriate proceedings to be brought.

Pub. L. No. 93-143, § 408(g); 87 Stat. 576, 592 (1973).

Finally, as relevant here, Congress added a new provision—Section 5(m)—which

addressed the allocation of litigating authority between the Attorney General and Commission

staff. Because that provision bears no resemblance or relationship to the current version of

Section 5(m), the Court will refer to it as "old Section 5(m)." Under old Section 5(m):

> Whenever in any civil proceeding involving this Act the Commission is authorized or required to appear in a court of the United States, or to be represented therein by the Attorney General of the United States, the Commission may elect to appear in its own name by any of its attorneys designated by it for such purpose, after formally notifying and consulting with and giving the Attorney General 10 days to take the action proposed by the Commission.

Pub. L. No. 93-143, § 408(d); 87 Stat. 576, 592 (1973).

Were this case brought under the 1973 version of the FTC Act, there would have been little doubt that the Commission had authority to bring the case. The FTC seeks civil penalties under Section 5(*l*), and the 1973 version of Section 16 authorized the Commission, when it had "reason to believe" that an entity was "liable to a penalty" under Section 5(*l*), to "certify the facts" supporting liability to the Attorney General for initiation of an "enforcement" action or, after complying with old Section 5(m), to bring an enforcement action itself. Mirroring the current version of Section 16, old Section 5(m), in turn, provided that in cases in which "the Commission is authorized" to "appear in a court of the United States" or may be "represented therein by the Attorney General," "the Commission may elect to appear in its own name by any of its attorneys . . . after formally notifying and consulting with and giving the Attorney General 10 days to take the action proposed by the Commission." 87 Stat. at 592. In short, Congress expressly referenced civil penalty cases under Section 5(*l*) and expressly authorized the Commission to bring those cases, after providing the Attorney General with 10 days to bring suit on behalf of the Commission.

Much of the debate in this case turns on the import of the next and final set of amendments that Congress enacted to the relevant provisions. In particular, just two years later, in 1975, Congress once again amended Section 16, and, after combining key portions of old Section 5(m) with Section 16, it eliminated old Section 5(m) as a stand-alone provision. The

1975 version of Section 16 (*i.e.*, the current version) is lengthy, and it contains special provisions relating to litigation before the U.S. Supreme Court, litigation involving short time limits, criminal proceedings, and foreign litigation. 15 U.S.C. § 56(a)(3)–(4), (b), (c). For present purposes, however, subparagraphs (a)(1) and (a)(2) are most relevant. They provide:

> (1) Except as otherwise provided in paragraph (2) or (3), if—
>
> > (A)  before commencing, defending, or intervening in, any civil action involving this subchapter (including an action to collect a civil penalty) which the Commission, or the Attorney General on behalf of the Commission, is authorized to commence, defend, or intervene in, the Commission gives written notification and undertakes to consult with the Attorney General with respect to such action; and
> >
> > (B)  the Attorney General fails within 45 days after receipt of such notification to commence, defend, or intervene in, such action;
>
> the Commission may commence, defend, or intervene in, and supervise the litigation of, such action and any appeal of such action in its own name by any of its attorneys designated by it for such purpose.
>
> (2) Except as otherwise provided in paragraph (3), in any civil action—
>
> > (A)  under section 53 of this title (relating to injunctive relief);
> >
> > (B)  under section 53 of this title (relating to injunctive relief);
> >
> > (C)  to obtain judicial review of a rule prescribed by the Commission, or a cease and desist order issued under section 45 of this title;
> >
> > (D)  under the second paragraph of section 49 of this title (relating to enforcement of a subpena) and under the fourth paragraph of such section (relating to compliance with section 46 of this title); or
> >
> > (E)  under section 57b-2a of this title;
>
> the Commission shall have exclusive authority to commence or defend, and supervise the litigation of, such action and any appeal of such action in its own name by any of its attorneys designated by it for such purpose, unless the Commission authorizes the Attorney General to do so. The Commission shall inform the Attorney General of the exercise of such authority and such exercise shall not preclude the Attorney General from intervening on behalf of the United

States in such action and any appeal of such action as may be otherwise provided
by law.

FTC Improvement Act, Pub. L. No. 93-637, 88 Stat. 2183, 2199 (1975); *see also* 15 U.S.C.
§ 56(a)(1)–(2).

The relevant question, then, is whether the 1975 version of the FTC Act retrenched on the
authority provided to the Commission in the 1973 version of the Act to bring actions for civil
penalties pursuant to Section 5(*l*), after providing the Attorney General with the required notice
and waiting the required number of days. According to 7-Eleven, the 1975 version clarified that
only the Attorney General may bring an action for civil penalties pursuant to Section 5(*l*), while
the FTC maintains that the 1973 version unambiguously authorized the Commission to bring
actions for civil penalties and that the 1975 version, if anything, expanded the Commission's
authority.

## B.

With this background in mind, the Court turns to the statutory text. As the FTC observes,
the titles of statutory provisions are at times illuminating. *See Dubin v. United States*, 599 U.S.
110, 120–21 (2023). Here, Section 5 governs "Unfair methods of competition" and "prevention
by [the] Commission," 15 U.S.C. § 45 (title), while Section 16 addresses the "Commencement,
defense, intervention and supervision of litigation and appeal[s] by [the] Commission or [the]
Attorney General," *id.* § 56 (title). Section 16(a), then, sets out the general framework for the
"exercise of [the] authority to litigate" and allocates litigation authority between the Attorney
General and the Commission. *Id.* § 56(a) (title).

Turning to the operative language, Section 16(a) starts with a limitation—"[e]xcept as
otherwise provided in paragraph (2) or (3)." 15 U.S.C. § 56(a)(1). Paragraph (2), then, grants
the Commission "exclusive authority" to bring certain actions, *id.* § 56(a)(2), while Paragraph (3)

grants the Attorney General and the Solicitor General enhanced authority to control litigation before the Supreme Court, *id.* § 56(a)(3). Neither of those exceptions applies here and, thus, neither limits the relevant grant of authority in Section 16(a)(1).

Beyond these exceptions, Section 16(a)(1) provides the Commission with broad authority to bring "any civil action involving [the FTC Act] (including an action to collect a civil penalty) which the Commission, or the Attorney General on behalf of the Commission, is authorized to commence," *if* the Commission first "gives written notification and undertakes to consult with the Attorney General with respect to such action" *and* "the Attorney General fails with 45 days after receipt of such notification to" bring "such action." *Id.* § 56(a)(1). Here, the FTC posits that it satisfied each of the three necessary conditions before bringing suit: (1) this is a "civil action involving" the FTC Act that the Commission or the Attorney General is otherwise authorized to bring; (2) the Commission provided the Attorney General with the requisite notice; and (3) the Attorney General failed to bring the action within 45 days. As the Commission notes, the statute encompasses "any" civil action under the FTC Act and, indeed, expressly refers to "an action to collect a civil penalty." *Id.* In short, on the FTC's telling, this case falls squarely and unambiguously within the statutory grant of litigation authority to the Commission.

In response, 7-Eleven focuses on five words: Section 16(a)(1)(A) refers to actions that the Commission is authorized to bring or actions that the Attorney General is authorized to bring "*on behalf of the Commission.*" *Id.* (emphasis added). Those five words matter, according to 7-Eleven, because it is Section 5(*l*) that authorizes the Attorney General to bring an action to recover the civil penalties at issue here, and, on 7-Eleven's reading, that provision grants the Attorney General authority to bring an action "on behalf of the United States," and not "on behalf of the Commission." *See* Dkt. 22-1 at 14; Dkt. 31 at 16. 7-Eleven's argument, thus, turns

12

on the twin propositions (1) that Section 5(*l*) only authorizes the Attorney General to sue "on behalf of the United States" and (2) that Section 16(a) only permits the Commission to sue in lieu of the Attorney General when the statute either grants the Commission authority to sue or grants the Attorney General to sue "on behalf of the Commission." The Court is unpersuaded for several reasons.

First and foremost, 7-Eleven reads words into Section 5(*l*) that do not appear in the text. 7-Eleven asserts: "Section 5(*l*) states affirmatively and unequivocally that actions like the one that the Commission filed against [it] may only be 'brought by the Attorney General of the United States' on behalf of the United States." Dkt. 22-1 at 24; *see also id.* at 13 ("Section 5(*l*) specifically states that only the Attorney General of the United States can bring such actions and makes clear that those actions are *on behalf of the United States*") (emphasis in original). The problem with 7-Eleven's argument is that, far from "affirmatively and unequivocally" providing that any civil penalty action commenced by the Attorney General under Section 5(*l*) is necessarily brought "on behalf of the United States"—and not on behalf of the Commission— Section 5(*l*) says no such thing. To the contrary, the provision merely states that the Attorney General "may" bring a civil action to, among other things, recover civil penalties for violations of FTC orders.

Rather than identifying any textual reference to proceeding "on behalf of the United States," 7-Eleven relies on the fact that Section 5(*l*) provides that any penalties recovered in a civil action "shall accrue to the United States." Dkt. 22-1 at 13–15. But that is a slim reed. As the FTC explains in its opposition brief, without retort from 7-Eleven: "*All* civil penalties collected by the FTC are paid into the United States Treasury under the Miscellaneous [Receipts] Act, including penalties" collected in actions commenced by the Commission under Section

5(m). Dkt. 29 at 26 (citing 31 U.S.C. § 3302) (emphasis is original). As the Department of

Justice's Office of Legal Counsel has explained, the Miscellaneous Receipts Act, which was

"originally enacted in 1849," is "[a] cornerstone of appropriations law" and "helps 'preserve[]

Congress's constitutional control over the expenditure of public funds.'" *Allocation of*

*Settlement Proceeds to the National Credit Union Under Administration's Share Insurance*

*Fund*, Memorandum Opinion for the Deputy Assistant Attorney General, Commercial Litigation

Branch, Civil Division from Christopher C. Fonzone, Assistant Attorney General, Office of

Legal Counsel, 2024 WL 4867855 (June 27, 2024) (citation omitted). "It does so by 'requiring

government officials to deposit government monies in the Treasury,' so that agencies cannot

"'us[e] such monies for unappropriated purposes'" or augment their appropriations with outside

funds. *Id.* (quoting *Scheduled Airlines Traffic Offs., Inc. v. Dep't of Def.*, 87 F.3d 1356, 1361–62

(D.C. Cir. 1996)). As a result, the disposition of any civil penalties recovered under Section

5(*l*)—or, for that matter, under Section 5(m)—is both the norm and unilluminating regarding the

question of statutory interpretation at issue here.

7-Eleven's efforts to answer this difficulty, if anything, merely highlights the flaw in its

argument. In its opening brief, 7-Eleven wrote: the fact "that Section 5(*l*) civil penalties accrue

to and are paid to the United States makes clear that any suit to obtain those penalties is on

behalf of the United States and not the Commission." Dkt. 22-1 at 14–15. But, in its reply brief,

after the Commission explained the operation of the Miscellaneous Receipts Act, 7-Eleven

wrote: "The ultimate question under Section 16 is *not* to whom the penalty is paid; it is on whose

behalf is the Attorney General bringing the suit." Dkt. 30 at 9 (emphasis added). That question

is best answered, according to 7-Eleven's reply brief, by the fact that, in "Section 5(m), the

Commission itself is expressly authorized to bring the civil-penalty action," while Section 5(*l*)

authorizes the Attorney General to do so and "makes no mention of a suit on behalf of the Commission." *Id.* Thus, 7-Eleven seems to abandon one of its principal arguments and to argue, instead, that we can infer that a Section 5(*l*) case is brought on behalf of the United States, and not the Commission, from the fact that the Attorney General is authorized to bring a Section 5(*l*) action, while the Commission is authorized to bring a Section 5(m) action. But 7-Eleven's comparison of Section 5(*l*) to Section 5(m) is unhelpful, because the question before the Court turns on those provisions in which Attorney General is authorized to bring suit and asks whether, *in those circumstances*, the Attorney General is acting "on behalf of the Commission," 15 U.S.C. § 56(a)(1)(A).

Nor is 7-Eleven's narrow construction of the phase "on behalf of the Commission" otherwise persuasive. To be sure, that phrase can have one of two meanings: it can mean "in the interest of" or "for the benefit of," *Behalf*, Webster's Third New International Dictionary 198 (1993), or it can mean "in the name of, on part of, [or] as the agent or representative of," *Behalf*, Black's Law Dictionary 184 (10th ed. 2014). Although "stalwart stylists" at times use the phrase "in behalf of" to refer to the first meaning, while using "on behalf of" to capture that latter meaning, as a matter of "current usage, th[at] distinction is seldom followed," and "on behalf of is much more common in both senses." Bryan A. Garner, *Garner's Modern English Usage* 129 (5th ed. 2022). Here, however, the distinction is of little significance, because Section 5(*l*) says nothing about whether the Attorney General should bring a civil penalties case in the name of the United States or in the name of the Commission.

In any event, as a matter of common usage, the Court is persuaded that Section 5(*l*) civil penalty proceedings are brought on behalf of—or for the benefit of—the Commission. The entire purpose of the provision is to enforce "orders of the Commission." 15 U.S.C. § 45(*l*). It is

what prevents parties from thumbing their noses at the Commission, and it is what gives Commission orders practical force. It appears, moreover, in the operative section of the FTC's organic statute—the section that provides the Commission with the tools and responsibilities to prevent unfair competition. *See* 15 U.S.C. § 45(a)(2) ("The Commission is hereby empowered and directed to prevent [regulated parties] from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."). And, although 7-Eleven focuses on the civil penalties prong of Section 5(*l*), Section 5(*l*) also "empower[s]" the district courts "to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission." 15 U.S.C. § 45(*l*). It is difficult to imagine an action that is more clearly brought on behalf of—or for the benefit of—the Commission than an action seeking an injunction compelling the respondent/defendant to comply with the Commission's final order.

Any doubt about this reading of the statute, moreover, is put firmly to rest by the statutory background discussed above. Recall that the 1973 version of the FTC Act included the current version of Section 5(*l*), which authorizes the Attorney General to bring actions to enforce final Commission orders by seeking both civil penalties and injunctive relief. Pub. L. No. 93-143, § 408(c), 87 Stat. 576, 591 (1973). And also recall that Section 16 and old Section 5(m), taken together, expressly permitted the Commission to "elect to appear in its own name by any of its attorneys," *id.* at 592, § 408(d), in an action for civil penalties "under subsection (*l*) of section 5," *id.* at § 408(g), in which the Commission is authorized "to be represented . . . by the Attorney General of the United States," *id.* at § 408(d). In other words, the 1973 version of the Act made clear that—under the very same language of Section 5(*l*) that appears in the current version of the Act—the Attorney General was authorized to "represent[]" the Commission in

16

bringing an enforcement action under Section 5(*l*).  Thus, at the time that Congress enacted the current version of Section 5(*l*), it made clear that the Attorney General's role under that provision was to "represent" the interests of the Commission.  Nothing contained in any subsequent legislation changed the meaning for Section 5(*l*), and, it is safe to assume that, when Congress enacted the current version of Section 16 just two years later, it was aware of what it had done in 1973.

Recognizing this difficulty with its argument, 7-Eleven maintains that Congress (1) created an "ambiguity" in 1973, (2) which it corrected in 1975.  Dkt. 30 at 7; *see also id.* at 16–19.  The Court is unpersuaded on both counts.  To start, the only ambiguity that 7-Eleven identifies in the 1973 version of the FTC Act is a product of 7-Eleven's misreading of Section 5(*l*); it maintains that the 1973 versions of Section 16 and old Section 5(m) conflicted with Section 5(*l*), because the 1973 legislation did not "amend[]" Section 5(*l*) "to say that Section 5(*l*) suits brought by the Attorney General were brought on behalf of the Commission, rather than the United States." *Id.* at 17.  But that argument is inescapably circular.  The meaning of Section 5(*l*) may be subject to fair debate, but one cannot reject all of the indicia that Section 5(*l*) means what the Commission says merely because that evidence does not square with 7-Eleven's preferred meaning.

Nor has 7-Eleven offered any evidence that Congress enacted the 1975 legislation, in part, to rectify this asserted lack of clarity.  To the contrary, although Congress consolidated old Section 5(m) with a new and more comprehensive version of Section 16, Congress did nothing to call into question its prior understanding—embodied in legislative text—that Section 5(*l*) authorizes the Attorney General to act for the benefit of—or as a "representative" of—the Commission.  Indeed, the statutory text points in just the opposite direction.  Where the 1973

version of Section 16 and old Section 5(m) permitted the Commission to bring a Section 5(*l*)

civil penalties proceeding in lieu of the Attorney General, so long as the Attorney General was

provided with 10 days' notice and an opportunity to bring the action, Pub. L. No. 93-143,

§ 408(d), (g), 87 Stat. 576, 591 (1973), the new (and current) version of Section 16(a) includes

an express reference to "an action to collect a civil penalty" in its analogous grant of authority to

the Commission, 15 U.S.C. § 56(a)(1)(A).  Had Congress intended to retract the authority that it

granted to the Commission just two years earlier, this would have been a strange way to do so.

      7-Eleven protests that the Commission's reading of Section 16 would, in effect, "give[]

the Commission the authority to bring any civil action under the FTC Act" and would thus

"nullify the limitations specified in the 'which' clause." Dkt. 30 at 7.  Why, posits 7-Eleven,

would Congress bother to specify that Section 16 applied to civil actions "which the

Commission, or the Attorney General on behalf of the Commission, is authorized to commence,

defend, or intervene in" when what they really intended was for all civil actions under the FTC

Act to be covered?  But even if the Court assumes for present purposes that 7-Eleven is correct

that, on this reading, the Commission would have sweeping litigating authority when the

Attorney General declines to proceed, the "which" clause would not be rendered meaningless.

Rather, as the Commission notes, when the current version of Section 16 was enacted in 1975,

"parties other than the FTC and [the Attorney General] could enforce the FTC Act." Dkt. 31 at

22 (Hrg. Tr. 22:15–16).  The Consumer Product Safety Commission ("CPSC"), for example, had

authority to enforce the Flammable Fabrics Act under the FTC Act.  In *United States v. Danube*

*Carpet Mills*, the CPSC "certified to the Attorney General facts indicating that [an FTC] consent

order had been violated." 737 F.2d 988, 991 & n.7 (11th Cir. 1984).  In response, "the United

States Department of Justice filed a complaint seeking civil penalties" under Section 5(*l*).  *Id.* at

991. In circumstances like this, the "which" clause functioned to bar the Commission from exercising authority vested in other agencies.

7-Eleven also maintains that "Sections 5(*l*) and 16(a)(1) cannot be read to authorize the Commission to bring" civil penalty actions, like this one, because doing so "would nullify the express and specific limits on the Commission's ability to bring suit under Section 5(m)"— namely, the prohibition on bringing suits based on consent orders (which was added in 1994, *see* Pub. L. No. 103-312, 108 Stat. 1691, 1691 (1994)) and the requirement that suits can be brought only based on orders respecting unfair or deceptive acts or practices, and not those respecting unfair methods of competition. Dkt. 22-1 at 16–17. But that elides an important difference between Section 5(m) and Section 5(*l*): Section 5(m) authorizes the Commission to bring suit against "any person, partnership, or corporation" which engages in a practice that has been declared unfair or deceptive in a final cease and desist order, "whether or not such person, partnership, or corporation was subject to such cease and desist order." 15 U.S.C. § 45(m)(B)(1). In other words, the Commission is authorized to bring an action for civil penalties against an entity that engages in an "act or practice" that a cease and desist order "establish[es]" as "unfair or deceptive," even if that entity was not a party to the cease and desist order. *Id.* § 45(m)(2). Given the breadth of Section 5(m), it makes sense that it does not apply to consent orders, which are adopted without an adversarial process and without the prospect of judicial review. Section 5(*l*), in marked contrast, applies only to proceedings against a party to the Commission's order.

The fact that Section 5(m) applies only to unfair or deceptive acts or practices is equally unhelpful in interpreting Sections 5(*l*) and 16(a). If a particular practice has been declared deceptive in one proceeding, the same practice is likely deceptive when practiced by a different

entity as well. On the other hand, unfair methods of competition typically require a fact-specific inquiry that depends, for example, on whether the respondent has market power in the market or markets at issue. The limitations on Section 5(m) thus need not be explained (as 7-Eleven would have it) as limitations on the universe of civil penalty suits the Commission can bring. Indeed, if anything, it is 7-Eleven's argument that would read important terms out of the statute; if, as 7-Eleven suggests, the Court must avoid granting the Commission litigation authority that exceeds the authority expressly granted to the Commission in provisions like Section 5(m), then one is left to wonder what, if any, work Section 16(a) does by allowing the Commission to commence an action, "which . . . the Attorney General" is otherwise authorized to commence "on behalf of the Commission." 15 U.S.C. § 56(a)(1)(A). 7-Eleven's argument also invites the question why Congress would have wanted to grant the Commission litigating authority in civil cases brought to enforce cease-and-desist orders against non-parties, while withholding that authority in cases brought against those who are parties to—and thus bound by—final Commission orders. Thus, if anything, it is 7-Eleven's reading of the FTC Act that would "set [these two provisions] at cross-purposes." *Jones v. Hendrix*, 599 U.S. 465, 478 (2023).

Finally, although the caselaw contains little substantive analysis, it tends to support the FTC's reading of the Act. In *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1234 & n.38 (11th Cir. 2018), for example, the Eleventh Circuit observed, albeit in *dicta*, that although "Section 5(*l*) directs the Commission to call upon the United States Attorney General to commence a civil-penalty action, . . . [t]he Commission can bring the action itself[] in accordance with the criteria in [Section 16(a)]." Similarly, in *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764, 788 (7th Cir. 2019) (Wood, C.J., dissenting), three members of the Seventh Circuit observed in a dissent from denial of rehearing *en banc* that the Commission "may, after providing notice to the Attorney General

under section 16 of the FTC Act, 15 U.S.C. § 56, sue someone who violates a cease-and-desist order, *see* FTC Act § 5(*l*)–(m), 15 U.S.C. § 45(*l*)–(m)." *See also id.* at 771 (majority op.) (noting that "the Commission can sue for civil penalties and any equitable relief" under Section 5(*l*)). And, as the Commission documents in its filings with this Court, numerous district courts have entered Section 5(*l*) stipulated judgments in cases brought by the FTC. Dkt. 29 at 31 (collecting cases).

At least one circuit, moreover, has opined that Section 10 of the FTC Act, which imposes penalties on those who fail to file annual reports required by the Commission and provides that those penalties "shall be recoverable in a civil action in the name of the United States," 15 U.S.C. § 50, is enforceable in an action commenced by the Commission pursuant to Section 16(a). *See Top Value Meats, Inc. v. FTC*, 586 F.2d 1275 (8th Cir. 1978). In that case, several meat companies filed suit against the FTC, "seeking to enjoin the enforcement of the reporting requirements." *Id.* at 1278. The FTC, in turn, filed counterclaims seeking penalties under Section 10, and the district court granted that relief. *Id.* at 1281. Although the issue was not presented in the district court, the Eighth Circuit "raised the question of whether the district court erred" in granting that relief because the "Commission" (rather than the Attorney General) was the party who filed the "counterclaims." *Id.* at 1282. Ultimately, the Eighth Circuit observed that the district court was without jurisdiction to award the penalties because the Commission had failed to provide the Attorney General with the required notice before commencing suit. *Id.* at 1282–83. But, as relevant here, the court observed that the Commission could have "eas[ily]" complied "with the requirements of § 16(a)(1)," and, had it done so, "the Attorney General could have decided either to intervene in the cases and claim the penalties . . . or he could have decided to stay out of the litigation, in which case the filing of the counterclaims by the Commission

would have been appropriate." *Id.* at 1283.  Here, in contrast to that case, the Commission did

provide the Attorney General with the required notice and, thus, under the reasoning of *Top*

*Value Meats*, was authorized to litigate the case on its own.

**C.**

For all of these reasons, the Court is persuaded that the statutory background and text

provide ample basis to uphold the Commission's authority to bring suit seeking civil penalties

(and, if appropriate, injunctive relief) under Section 5(*l*), as long as the Commission complies

with the procedural requirements of Section 16(a) by providing the Attorney General with the

required written notification and consultation, and by waiting the required 45 days.  Although

unnecessary to the disposition of 7-Eleven's motion to dismiss, the Court pauses to make brief

mention of the legislative history, which both parties invoke in support of their respective

position.

Most notably, the parties present very different explanations of the 1975 revisions.

According to the FTC, "[t]he revised Section 16 was expanded to encompass all of the new

enforcement actions added to the Act as part of the 1975 Amendments—which included new

civil penalty actions." *Id.* at 14.  On the FTC's view, "[a]s the FTC Act expanded over time to

include new types of civil penalty actions, such as those brought pursuant to Section 5(*l*) or 5(m),

Congress elected not to add references to each new type of action; instead, it captured those with

a general reference to 'any civil action.'" Dkt. 29 at 17.  7-Eleven, on the other hand, contends

that the removal of the explicit reference to Section 5(*l*) was intentional: "If Congress had

intended in 1975 (or at any point since then) for Section 16 to apply to Section 5(*l*) it would have

left in—not removed—the words 'under subsection (l) of section 5 of this Act.'" Dkt. 22-1 at

21.

22

Suffice it to say for present purposes that nothing contained in the legislative history tips the interpretative scales back in favor of 7-Eleven. To the contrary, the Senate Conference Report on the 1975 revision is clear regarding "the Commission's authority to represent itself through its own legal representatives in civil proceedings before courts of the United States." S. Rep. 93-1408 (1974) (Conf. Rep.) at 37, as reprinted in 1974 U.S.C.C.A.N. 7755, 7769. The Conference Committee agreed to grant "the Commission exclusive authority to appear in its own name through its own legal representatives and to supervise the litigation" in the five categories of proceedings listed in Section 16(a)(2). *Id.* The Conference Committee, then, declared: "In any other civil action involving the Federal Trade Commission Act, the Commission may appear in its own name through its own legal representatives only if the Commission gives written notification and undertakes to consult with the Attorney General and thereafter the Attorney General fails within 45 days after receiving such notification to commence, defend, or intervene in, such action." *Id.* at 39. That is the FTC's position here, and it the position that most coheres with the statutory background and text.

### D.

Finally, 7-Eleven argues that the FTC's failure to make substantial use over the past 40 years of Section 5(*l*) and Section 16(a) to bring enforcement actions without the assistance of the Attorney General offers proof of the Commission's overreach in this case. The Court is, again, unpersuaded. As an initial matter, the Commission convincingly explains that, because the Attorney General has the right of first refusal and is generally supportive of agency enforcement efforts, it is unsurprising that the Commission rarely has cause to bring an action without the assistance of the Attorney General. *See* Dkt. 31 at 21 (Hrg. Tr. 21:5–9).

23

In any event, as explained above, it is a common occurrence for the Commission to bring uncontested Section 5(*l*) proceedings without the assistance of the Attorney General. *See* Dkt. 29 at 31 (collecting cases). To be sure, 7-Eleven pointed out in its reply brief that the Commission's opposition brief failed to identify a single *contested* civil penalty action under Section 5(*l*) that had been brought by the Commission since the 1975 amendment. Dkt. 30 at 12. At oral argument, however, the FTC identified several contested Section 5(*l*) civil penalty cases brought by the FTC, Dkt. 31 at 19–21 (Hrg. Tr. 19:12–21:4), and, with leave of the Court, the Commission filed a notice of supplemental authorities to provide the Court with those cases, Dkt. 32. In response, 7-Eleven noted that "[i]n each case, the defendant did not contest the FTC's authority to bring an action for civil penalties under § 45(*l*) and § 56(a)(1), and the court did not issue a reasoned opinion addressing the question whether § 56(a)(1)'s coverage of civil penalty actions is limited to suits under § 45(m)." Dkt. 33 at 1. According to 7-Eleven, that "history makes clear" that civil penalty suits under Section 5(*l*) "must be brought by the Attorney General of the United States," Dkt. 22-1 at 22, and "the fact that the best authority the FTC has managed to dredge up is just four cases in which the issue of the agency's authority . . . was not even litigated" supports that view. Dkt. 33 at 2.

In the Court's view, this history does little to help either side in the present dispute. A grant of suit-bringing authority to an agency does not lapse if left unused, let alone when used rarely. *See United States v. Morton Salt Co.*, 338 U.S. 632, 647 (1950) ("The fact that powers long have been unexercised well may call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant, any more than nonexistent powers can be prescripted by an unchallenged exercise."). Moreover, little can be gleaned from cases in which the defendants failed to mount the same defense that 7-Eleven mounts here. One can

hardly fault the FTC for failing to raise what it regards to be a non-issue, nor can one assume that the FTC has only newly discovered an authority that it has used on many occasions. On the other hand, 7-Eleven is certainly correct that judicial practice that fails to confront or to address a colorable issue cannot be equated with judicial concurrence with the FTC's view. *See, e.g.,* *United States v. Blavtnik*, 168 F. Supp. 3d 36, 37 (D.D.C. 2016) (disagreeing with "40 years of consistent" but untested practice regarding approval of antitrust consent decrees).

Thus, in the end, practice untested—by the Commission, the Attorney General, and the courts—offers little help, and as discussed above, what little judicial precedent that does exist supports the Commission's reading of the Act.

\* \* \*

The Court, accordingly, concludes that both the statutory background and text support the Commission's reading of Section 16(a) and Section 5(*l*); that, although unnecessary to the Court's disposition, the legislative history further supports that reading; and that agency and judicial practice are, at best, neutral. In the Court's view, the Commission acted within its authority by bringing this action after first providing the required written notice to the Attorney General and then waiting the required 45 days.

## CONCLUSION

For the foregoing reasons, 7-Eleven's motion to dismiss the complaint, Dkt. 22, is hereby **DENIED**.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge